STANDARD OIL COMPANY, a corporation of the State of Indiana, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY and the HONORABLE FRANK L. SPEAKMAN, sitting as Judge of said Court, Respondents. (Three cases).

STANDARD OIL COMPANY, a corporation of the State of Indiana, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY and the HONORABLE FRANK L. SPEAKMAN, sitting as Judge of said Court, and JACOB BLAUSTEIN, Respondents.

STANDARD OIL COMPANY, a corporation of the State of Indiana, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY and the HONORABLE FRANK L. SPEAKMAN, sitting as Judge of said Court, and JACOB BLAUSTEIN, HENRIETTA BLAUSTEIN, FANNY B. THALHEIMER and RUTH B. ROSENBERG, Executors of Louis Blaustein, deceased, Respondents.

STANDARD OIL COMPANY, a corporation of the State of Indiana, Petitioner, v. THE SUPERIOR COURT OF THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY and the HONORABLE FRANK L. SPEAKMAN, sitting as Judge of said Court, and AMERICAN TRADING AND PRODUCTION CORPORATION, a corporation of the State of Maryland, Respondents.

(*November* 1, 1948.)

HARRINGTON, CH., TERRY, CAREY and PEARSON, J. J., sitting.

*Hugh M. Morris, Edwin D. Steel, Jr.* and *S. Samuel*

540

*Arsht,* and *Ralph S. Harris, John R. McCullough* and *Frederick W. P. Lorenzen* (of New York, New York) for petitioner.

*Clarence A. Southerland, Caleb S. Layton* and *Aaron Finger, Nathan L. Miller* (of New York, New York), and *Karl F. Steinmann* (of Baltimore, Maryland), for respondents.

Supreme Court of Delaware.

PEARSON, Judge, delivering the opinion of the Court:

In these prohibition cases, petitioner challenges the jurisdiction of the Superior Court in three actions against it. The actions were begun by attachments of petitioner's property purportedly made under authority of a foreign corporation attachment statute, *Revised Code of Delaware* 1935, § 4631. Petitioner contends that the statute, properly construed, does not authorize proceedings under it in these actions; but that if it were construed to be applicable to them, it would violate the commerce clause, *art. I, Sec. 8*, of the Federal Constitution by imposing an undue burden upon interstate commerce conducted by petitioner, and would further violate the due process clause, Fourteenth Amendment, by depriving petitioner of its property without due process of law. The Superior Court considered these contentions and determined them adversely to petitioner.

The statute, insofar as we need consider it, provides as follows:

"4631. Sec. 26. Foreign Corporations; Subject to Foreign Attachment Laws; How Writ Obtained: Affidavit; Purport of; Writ; How Framed, Directed, Executed, and Returned; Attachments Dissolved How; Judgment, When Obtained; Security for Dissolution of Attachment; Form and Amount of How Determined;—A writ of foreign attachment may be issued out of the Superior Court of this State against any corporation, aggregate or sole, not created by or existing under the laws of this State, upon affidavit made by the plaintiff or any other credible person, and filed with the Prothonotary of said Court, that the defendant is a corporation not created by, or existing under

the laws of this State, and is justly indebted to the said plaintiff in a sum of money, to be specified in said affidavit, and which shall exceed fifty dollars.

"The said writ shall be framed, directed, executed and returned, and like proceedings had as in the case of a foreign attachment issued under the next foregoing section, except that attachments to be issued under this section shall be dissolved only in the manner hereinafter provided. * * *"

Petitioner's first point is that the statute "does not authorize a writ of foreign attachment upon a foreign cause of action at the behest of a foreign plaintiff against a foreign corporation." None of the plaintiffs in the law actions is a resident of Delaware or a Delaware corporation. The defendant (petitioner here) is an Indiana corporation. It owns no tangible property in Delaware, but owns shares of stock in a Delaware corporation which were attached in the actions. It is not qualified to do business in Delaware and does no business here. Its principal executive offices are in Chicago, and it transacts business in some fifteen midwestern states. It has no offices, directors, employees, or agents in Delaware. Its directors have never met in Delaware. The alleged causes of action against the petitioner are in covenant and are based upon breaches of an instrument executed outside of Delaware. No undertaking or covenant alleged to have been breached requires the doing of any act in Delaware.

Petitioner observes that the terms of the statute authorizing the process of foreign attachment are general; "it does not state by whom that process may be availed; for what causes of action it may be utilized or against what foreign corporations it may issue." Nevertheless, it is argued, a construction of the statute with reference to other rules of law excludes from its ambit the writs issued in these actions. Strong reliance is placed on the case of

*National Bank of Wilmington & Brandywine v. Furtick*, 2
*Marv.* 35, 42 *A.* 479, 480, 44 *L.R.A.* 115, 69 *Am. St. Rep.* 99.
That case was begun by foreign attachment. The plaintiff
attempted to attach a credit of the defendant in the hands
of an insurance company incorporated under the laws of
Great Britain by summoning it as garnishee. The insur-
ance company had qualified to do business in Delaware, and
service was made upon its agent in Delaware designated
pursuant to the insurance statutes. The defendant's claim
against the insurance company was for a fire loss in South
Carolina. A motion to vacate the attachment was granted.
For present purposes, the case may be considered as though
it were an action in Delaware by the defendant (a non-resi-
dent) against the garnishee (foreign) insurance company,
based on the fire loss in South Carolina, a summons having
been served on an agent designated by the insurance com-
pany. The Court assigned three grounds for its decision.
With the first and second, we are not concerned. The third
ground was that, notwithstanding general language of the
designation by the insurance company of a "person or agent,
within this state, upon whom service of process may be
made", and the statutory provision that "all process against
such company issued out of the courts of this State, may
then and thereafter be served upon such person or agent
so designated," 16 *Del. Laws, c.* 347, the insurance statute
should be construed as inapplicable to an action by a non-
resident, not arising out of business done in Delaware. In
the opinion, the court said:

"The statute provides that, before  foreign insurance
companies shall be permitted to do business in this state,
they must appoint an agent upon whom process may be
served. The condition has relation to the permission given.
The presumption is that only such jurisdiction is claimed as
is necessary to deal with litigation arising out of the busi-
ness that is done under this permission. 'Statutes by which

the jurisdiction is assumed should be construed strictly, and should not, unless their language is explicit, be held to confer jurisdiction beyond that which is required to enable the courts to take cognizance of matters arising out of the business done within the state, or else to protect and enforce the rights of the residents of their own state against foreign corporations.'

"Judge Wheeler, in a case decided in Vermont in 1874 (*Sawyer v.[North American Life] Insurance Co.,* 46 Vt. 697), expressed very strongly the opinion that a statute providing for the appointment of an agent on whom a process might be served ought not to be construed as intending to permit a nonresident to sue a foreign corporation for a cause of action arising outside of the state. He said that, even assuming that the agent in that case had been appointed in obedience to the statute, the question still remained what cases the statute was intended to reach. A statute is to be construed with reference to the old law, the mischief, and the remedy. When this statute was passed, the old law permitted the agents of any insurance company, foreign as well as domestic, to make contracts of insurance within the state under which causes of action would accrue to our own people within the jurisdiction of the state courts. The mischief was that the jurisdiction of the state courts over these causes of action would be unavailing except upon voluntary appearance, for want of power in the courts to compel appearance. The remedy provided was the requiring of any foreign insurance company making such contract to keep an agent in this state on whom service could be made.

"This would be a full remedy for all that mischief, without requiring such companies to keep an agent here on whom any process for any purpose could be served. There could be no advantage obtained for the people of the state

by providing means to give the courts of the state jurisdiction over causes of action that occurred out of the state in favor of persons not citizens of the state against a corporation existing out of the state; and it is not to be presumed that the legislature intended to accomplish that purpose unless that is the necessary result of the enactment. It is more reasonable to suppose that the intention was to provide a method for obtaining jurisdiction over a defendant to a cause of action the courts had jurisdiction of before, than that it was to provide means for obtaining jurisdiction of a cause of action where none was had before, and of the parties also, by the compulsory appointment of an agent. 12 *Harv. Law Rev.* 1.

"The statute is not so explicit as to be clearly intended to require a foreign insurance company to submit to suits in this state having no relation to the business done within the state, nor with one of her citizens, or to suits brought by persons that are citizens of the state where the corporation was organized, or of some other foreign state. For this reason the attachment would have to be dismissed in this case."

Petitioner argues that in so deciding the Court laid down a rule of general application; and that the reasons for the rule are of general application and "have convinced the Supreme Court of the United States and many other courts to reach similar results in a variety of cases," citing *Morris & Co. v. Skandinavia Ins. Co.*, 279 *U. S.* 405, 49 *S. Ct.* 360, 73 *L.Ed.* 762; *Mitchell Furniture Co. v. Selden Breck Co.*, 257 *U. S.* 213, 42 *S.Ct.* 84, 66 *L.Ed.* 201, among others. Continuing, petitioner says that the reasons and the rule of the Furtick case apply to actions against foreign corporations whether the process employed is foreign attachment or summons, their purpose being the same, namely, to compel the appearance of the defendant. Petitioner cites *Pull-*

man *Palace Car Co. v. Harrison,* 122 *Ala.* 149, 25 *So.* 697, 82 *Am. St. Rep.* 68; *W. H. Hodges & Co. v. Pennsylvania R. Co.,* 171 *La.* 699, 132 *So.* 115; *French v. Artistic Furniture Co.,* 173 *La.* 982, 139 *So.* 307 in support of its contention that a defendant should not "be made liable upon a cause of action by suit in attachment, when it would not be liable in the same court, upon the same cause of action, by suit commenced by summons and complaint upon personal service, because of the want of jurisdiction in the court to hear and determine the cause" (25 So. 700). Petitioner also refers to *Eastern Union Co. of Delaware v. Moffat Tunnel Imp. Dist.,* 6 *W. W. Harr.* 488, 178 *A.* 864, 870 as recognizing such a principle, and particularly the following quotation from that case: "The purpose of the foreign attachment statute is solely to supply a means of process to secure the limited presence before the court of a non-resident defendant through seizure of his property located here, and to the extent of the value of the seized property to subject the non-resident to a possible satisfaction of the plaintiff's demand. The process provided by the statute cannot be utilized to bring before the court in this limited way an absent defendant where, if the process were that of a summons personally served, the court would refuse to assert its jurisdiction over the defendant. This would seem to be self-evident. The fact, therefore, that the foreign attachment statute (*Revised Code* 1915, § 4143) in general terms provides that the writ may issue against 'any corporation, aggregate or sole, not created by or under the laws of this State,' cannot have the effect of subjecting a foreign corporation to proceedings under the statute if, on general principles, the court would not entertain jurisdiction over it."

Despite the logic of petitioner's argument as stated, we think there are additional considerations than those dealt with, which must be taken into account. Our primary task

at this point is to construe Section 4631 with particular reference to whether the foreign attachment process · is available in actions by non-resident plaintiffs for causes arising outside of Delaware. As petitioner freely concedes, the terms of the act in these respects are general and sufficient to embrace non-resident plaintiffs and foreign causes. Whether the general language should be construed as limited, as petitioner urges, depends on considerations apart from anything contained in the act.

The language with which we are concerned is substantially the same as the first two sections of its earliest forerunner, adopted in 1857, 11 *Laws of Del. p.* 482. As we pointed out in another opinion in this litigation (4 *Terry* 450, 49 *A.*2d 726, 734), the 1857 Act was adopted shortly after the Superior Court had held that the 1852 Code provisions[1] for foreign attachment were not applicable to foreign corporations but only to individual defendants. We also pointed out that "The 1857 Act is closely related to the 1852 Code provisions by express reference, and in its history, purpose and content." Now, we think it irrefragable that these provisions of the 1852 Code, which now remain substantially unchanged as Section 4630 of the 1935 Code, authorize foreign attachment writs in actions against non-resident individual defendants brought by non-resident plaintiffs on "foreign" causes of action. Compare *Ownbey v. Morgan,* 256 *U. S.* 94, 41 *S. Ct.* 433, 65 *L.Ed.* 837, 17 *A.L.R.* 873; *Johnstone v. Kelly,* 7 *Penn.* 119, 74 *A.* 1099. The similarity in phraseology of the 1852 Code and the 1857 Act,

---

[1] The 1852 Code provisions referred to read thus (Chap. 104, Sec. 19, p. 374): "A writ of foreign attachment may be issued against any person not an inhabitant of this State, after a return to a summons, or capias, issued and delivered to the sheriff, or coroner, ten days before the return thereof, showing that the defendant cannot be found, and proof, satisfactory to the court, of the cause of action; or upon affidavit made by the plaintiff, or some other credible person, and filed with the prothonotary, that the defendant resides out of the State, and is justly indebted to the said plaintiff in a sum exceeding fifty dollars."

together with the history of the latter, furnish persuasive reasons for construing the 1857 Act as applicable in like situations so far as the residence of the plaintiff and the place where the cause of action accrues are concerned.

Moreover, differences between a corporation and an individual do not suggest any reason for treating them differently with respect to jurisdiction in quasi in rem proceedings, such as are authorized by this statute. The basic jurisdictional doctrine involved is the same whether the property seized be owned by a foreign corporation or by a non-resident individual: that a state may, by appropriate legislation, authorize the seizure and disposal of property within its borders, subject to limitations of the federal and state constitutions. *McLaughlin v. Bahre*, 5 *W. W. Harr.* 446, 166 *A.* 800.

Petitioner says that these considerations are outweighed by the rule and the reasons of the Furtick case. That rule and those reasons relate to the subject of jurisdiction in a proceeding in personam. A review of the development of doctrines of jurisdiction in personam over a corporation bears this out. The doctrines grew up after actions quasi in rem against foreign corporations had been recognized. In *The Position of Foreign Corporations in American Constitutional Law,* by *Gerard Carl Henderson (Harvard Studies in Jurisprudence, Vol. II) Chap.* 5, *pp.* 77, 78, we find:

"As foreign corporations became an increasingly important factor in the business communities of the several states, and their legal status to be generally recognized and accepted, the question inevitably arose whether they could be subjected to suit within the state. Until toward the middle of the century, the idea seems to have been widely prevalent that foreign attachment was the only process available against them. * * *

"There was, of course, no doubt that foreign attachment against corporations of other states could be expressly authorized by statute. Rhode Island made such a provision in 1822, New York in 1829, Maryland in 1832, Pennsylvania in 1836, New Jersey and Massachusetts in 1839. By 1850, Missouri, Michigan, Maine and Wisconsin had followed suit. In the meantime the Supreme Court of Pennsylvania in an exhaustive opinion had declined to follow the lead of New York, and had construed its general foreign attachment statutes as applicable to foreign corporations. Until the middle of the century, this seems to have been the normal way of proceeding against corporations of other states."

In *St. Clair v. Cox*, (1882) 106 *U. S.* 350, 354, 1 *S. Ct.* 354, 357, 27 *L. Ed.* 222, Mr. Justice Field said: "Formerly it was held that a foreign corporation could not be sued in an action for the recovery of a personal demand outside of the state by which it was chartered. The prinicple that a corporation must dwell in the place of its creation, and cannot, as said by Chief Justice Taney, migrate to another sovereignty, coupled with the doctrine that an officer of the corporation does not carry his functions with him when he leaves his state, prevented the maintenance of personal actions against it. There was no mode of compelling its appearance in the foreign jurisdiction. Legal proceedings there against it were, therefore, necessarily confined to the disposition of such property belonging to it as could be there found; and to authorize them legislation was necessary."

See also *Goodrich on Conflict of Laws, p.* 147.

Jurisdictional doctrines relating to actions in personam developed separately from those relating to actions quasi in rem. That development was profoundly influenced by the non-migratory principle mentioned by Mr. Justice Field in

the quotation above. (Obviously, no such principle applied in the case of in personam actions against non-resident individuals, since their capacity to be physically present in a state was recognized and such presence made them subject to personal service of process.) At least two legal theories developed to support the subjection of foreign corporations to actions in personam. We quote the following discussion from *Goodrich on Conflict of Laws, pp.* 147-151:

"Such a doctrine [the non-migratory principle] of necessity could not remain as the last word on the subject in an era of ever-increasing development of corporate activity. Some theory had to be worked out by which the foreign corporations could be subjected to suit in states other than where they were organized. This theory was found in the consent doctrine. The corporation, like the individual, could consent to suit in a place at which it was not personally present. Furthermore, the state could refuse to allow a foregn corporation to do business within its borders, subject to certain exceptions. Since it could refuse permission altogether, it could allow the corporation to do business within the state subject to certain conditions. One of these conditions could be the consent of the corporation to be sued in the state. The corporation, then, could be required to appoint an agent to receive service of process in suits brought against it within the state. If the foreign corporation has actually made such appointment, it is clear that it has consented to be sued and the state's courts have jurisdiction to render a valid judgment against it. Whether the jurisdiction extends to suits upon all causes of action or only to those growing out of business done within the state is a question to be determined by ascertaining how broadly the consent given is to be interpreted.

"The consent doctrine has been enunciated in many judicial decisions, and is a satisfactory enough explanation

of the basis of jurisdiction where consent is in fact given. There are situations, however, where actual consent is difficult if not impossible to find, and yet where it has been held that courts have jurisdiction to render judgment against the foreign corporation. * * * So the consent theory is not broad enough to cover all the situations where it is clear, as a matter of established law, that the corporation may be sued.

"Faced with this difficulty, some authorities have said that adherence to facts demands that it be realized that a corporation is in truth present wherever it does business. Wherever the group activity of the corporate enterprise is being carried on, there the corporation is found. * * *

"It may be said, then, that a foreign corporation (I) may be sued in a state where it consents to be sued; (II) Even in the absence of consent, if the foreign corporation does business in a state it becomes subject to the jurisdiction of the courts of the state to the extent that the state's laws so provide, and subject to the limitations of due process of law. The jurisdiction in the latter case extends only to causes of action arising out of business done in the state.

"Unless the foreign corporation is doing business in the state it is not, in the absence of express consent, subject to the jurisdiction of its courts. The mere presence within the state of an agent or even a principal officer is insufficient as a basis for jurisdiction, and a judgment rendered against the corporation upon such service is invalid. But if the corporation has been engaged in business in the state and has later ceased to do so, the state may provide for service of process upon the corporation for causes of action which arose within the state before the withdrawal."

The treatment of this subject in *Henderson: The Position of Foreign Corporations in American Constitutional Law, Chap. 5, supra,* is of like import.

It seems to us clear that these jurisdictional doctrines relate uniquely to actions in personam with reference to which they grew up. They do not relate to jurisdiction in proceedings in rem or quasi in rem. Thus, in *Beale on Foreign Corporations* (1904) § 283, we read:

"Though a State has no power over a foreign corporation, it nevertheless has complete jurisdiction over the property of the corporation within its borders. Irrespective, therefore, of whether the corporation has done business within the State or has consented to be sued in its courts, the courts of the State may proceed in rem against any tangible property situated in the State. * * *

"On this ground are to be justified suits against a foreign corporation which has not done business within the State, begun by attachment of property of the corporation within the State, the corporation being served by publication. Statutes commonly permit such suits. The jurisdiction is quasi in rem, and the judgment is valid so far as it affects the disposition of the property under attachment and no further."

Returning again to the Furtick case, the court was considering statutes which required a foreign insurance company to designate an agent for the service of process, and authorized service upon the agent. The first such statute was adopted in 1879, 16 *Laws of Del., Chap.* 347, *p.* 359, subsequent to the foreign corporation attachment Act of 1857. The Futrick case was decided in 1897. We think the opinion shows that the court's construction of the statutes before it was materially affected by the non-migratory and consent doctrines of jurisdiction in personam over foreign corporations. It treated the requirement of designation of an agent as a condition of permission to do business in Delaware and held that [2 *Marv.* 35, 42 *A.* 483] "only such jurisdiction is claimed as is necessary to deal with litigation arising out of

the business that is done under this permission." The court further said that the statute must "be construed with reference to the old law, the mischief, and the remedy." But the court did not discuss quasi in rem proceedings in this connection. It nowhere referred to them as a part of the "old law", or as affected by the "remedy" of the new. We find no justification for implying, as qualifications of the 1857 quasi in rem Act, the exclusion of "foreign causes" and non-resident plaintiffs, which the court implied as qualifications of the subsequent act relating to proceedings in personam.

In the Alabama and Louisiana cases, *supra,* the courts reached different results based on different reasoning. That reasoning does not seem to us as satisfactory as the foregoing, and we decline to follow the cases.

■ We have not overlooked the language of this Court in the *Moffat Tunnel Case* [6 *W. W. Harr.* 488, 178 *A.* 870], *supra.* That language must be read with reference to the facts and questions before the Court. The holding was that Section 4631 does not authorize quasi in rem proceedings against foreign municipal or public corporations. The Court did say that foreign attachment process cannot be utilized "where, if the process were that of a summons personally served, the court would refuse to assert its jurisdiction over the defendant." But the Court did not have before it a question of limiting quasi in rem jurisdiction under an older statute by conditions which developed solely with relation to jurisdiction in personam under later statutes. The Moffat Tunnel case, in our view, decides nothing contrary to what we now hold: that Section 4631 authorizes proceedings by foreign plaintiffs based on "foreign" causes of action.

Petitioner's second point is that if Section 4631 be construed as applicable to the three law actions, it would un-

reasonably burden interstate commerce and to that extent be void by virtue of violating the commerce clause of the Federal Constitution. The following facts, in addition to others stated above, were considered by the Superior Court particularly with reference to this point, and will be adopted here for present purposes:

1. The petitioner carries on a large interstate business in the middlewest consisting of the refining of crude oil into petroleum products in Illinois, Indiana, Missouri, Kansas and Wyoming, and the marketing of such products not only in the five mentioned states but in ten other states. In addition to this general interstate business the petitioner is specifically engaged on a large scale in the interstate transportation of its products. To this end petitioner maintains hundreds of miles of interstate pipe lines, interstate barge lines, interstate tanker lines and interstate trucking lines. These lines move millions of barrels of petroleum products in interstate commerce.

2. In connection with petitioner's business there are presented against petitioner annually in excess of 2,500 claims or causes of action for personal injuries and property damage. In many of such cases petitioner deems it imperative or advisable to leave the determination of its liability with respect to such claims to the courts. More than 75% of such claims involve facts known to employees of petitioner directly engaged in petitioner's interstate transportation operations. The trial of claims requires the presence of such employees as witnesses. If the State of Delaware should assume jurisdiction over claims against petitioner by virtue of Delaware's attachment statutes, litigation of such claims would entail long absence of petitioner's officers and employees from their customary occupations in connection with testifying in such Delaware litigation and would impair substantially the efficiency of petitioner's

interstate operations as well as cause, directly and indirectly, heavy expense to the petitioner.

3. The present litigation would be particularly burdensome to petitioner as well as to the courts and taxpayers of the State of Delaware for it involves issues of tremendous magnitude and may require the taking of thousands of pages of testimony and the calling of a very large number of witnesses, none of whom resides in Delaware.

The portion of the commerce clause upon which petitioner relies is as follows, *Art. I, Sec.* 8, *Federal Constitution*: "The Congress shall have Power * * * To regulate Commerce * * * among the several States * * *."

4. Petitioner says that "By virtue of this delegation of authority to the Federal government it has been held under a variety of circumstances that the several states may not, by direct regulation, taxation, or otherwise, unduly obstruct or burden commerce among the several states," citing *International Text-Book Co. v. Pigg*, 217 *U. S.* 91, 30 *S. Ct.* 481, 54 *L. Ed.* 678, 27 *L.R.A.* (*N.S.*) 493, 18 *Ann. Cas.* 1103; *Buck Stove & Range Co. v. Vickers*, 226 *U. S.* 205, 33 *S.Ct.* 41, 57 *L.Ed.* 189; *Adams Mfg. Co. v. Storen*, 304 *U. S.* 307, 58 *S.Ct.* 913, 82 *L.Ed.* 1365, 117 *A.L.R.* 429; *Best & Co. v. Maxwell*, 311 *U. S.* 454, 61 *S.Ct.* 334, 85 *L.Ed.* 275; *Western Union Tel. Co. v. State of Kansas*, 216 *U.S.* 1, 30 *S.Ct.* 190, 54 *L.Ed.* 355. This proposition is not disputed. Next, petitioner argues that "state jurisdictional statutes, like Section 4631 here, whereby states attempted to exercise jurisdiction over foreign corporations actively engaged in interstate commerce upon foreign causes of action" have been held violative of the commerce clause "wherever it could factually be shown, as in the present case, that the exercise of jurisdiction, in fact, would substantially impair the efficiency of the petitioner's operations in interstate commerce", citing *Davis v. Farmers' Co-operative Co.*, 262

*U. S.* 312, 43 *S.Ct.* 556, 67 *L.Ed.* 996; *Atchinson, T. & S. F. Ry. Co. v. Wells,* 265 *U. S.* 101, 44 *S.Ct.* 469, 68 *L.Ed.* 928; *Michigan Central R. Co. v. Mix,* 278 *U. S.* 492, 49 *S.Ct.* 207, 73 *L.Ed.* 470; *Denver & R. G. W. R. Co. v. Terte,* 284 *U. S.* 284, 52 *S.Ct.* 152, 76 *L.Ed.* 295.

In each of these cases, the foreign corporation which asked for and obtained immunity from suit on a foreign cause of action was a common carrier for hire. The Davis case was the first. An action was brought in a Minnesota court by a Kansas corporation to recover against a railway company, incorporated in Kansas, for a cause of action which arose in Kansas. The railway company was engaged in interstate commerce. It neither owned nor operated a railroad in Minnesota but maintained an agent there for the solicitation of traffic. The Supreme Court of Minnesota, *Farmers' Co-Op. Equity Co. v. Payne,* 150 *Minn.* 534, 186 *N.W.* 130, held that the railway company was subject to the jurisdiction of the Court of that state under a Minnesota statute authorizing service upon a foreign carrier's traffic soliciting agent in the state. The judgment for plaintiff was reversed by the Supreme Court of the United States, which found that the attempted subjection to suit by foreign plaintiffs on foreign causes of action imposed upon interstate commerce a serious and unreasonable burden, which rendered the statute obnoxious to the commerce clause. The court said [262 *U. S.* 312, 43 *S.Ct.* 557]:

"Solicitation of traffic by railroads, in states remote from their lines, is a recognized part of the business of interstate transportation. * * *

"That the claims against interstate carriers for personal injuries and for loss and damage of freight are numerous; that the amounts demanded are large; that in many cases carriers deem it imperative, or advisable, to leave the determination of their liability to the courts; that litigation

in states and jurisdictions remote from that in which the cause of action arose entails absence of employees from their customary occupations; and that this impairs efficiency in operation, and causes, directly and indirectly, heavy expense to the carriers—these are matters of common knowledge. Facts, of which we, also, take judicial notice, indicate that the burden upon interstate carriers imposed specifically by the statute here assailed is a heavy one; and that the resulting obstruction to commerce must be serious. * * *

"The fact that the business carried on by a corporation is entirely interstate in character does not render the corporation immune from the ordinary process of the courts of a state. *International Harvester Co. [of America] v. [Commonwealth of] Kentucky*, 234 *U. S.* 579, 34 *S.Ct.* 944, 58 *L.Ed.* 1479. The requirements of orderly, effective administration of justice are paramount. * * * But orderly effective administration of justice clearly does not require that a foreign carrier shall submit to a suit in a state in which the cause of action did not arise, in which the transaction giving rise to it was not entered upon, in which the carrier neither owns nor operates a railroad, and in which the plaintiff does not reside. The public and the carriers are alike interested in maintaining adequate, uninterrupted transportation service at reasonable cost. This common interest is emphasized by Transportation Act 1920, which authorizes rate increases necessary to ensure to carriers efficiently operated a fair return on property devoted to the public use. See *Railroad Commission of [State of] Wisconsin v. Chicago, Burlington & Quincy R. R. Co.*, 257 *U. S.* 563, 42 *S.Ct.* 232, 66 *L.Ed.* 371, 22 *A.L.R.* 1086; *The New England Divisions Case [Akron, C. & Y. R. Co. v. United States]*, 261 *U. S.* 184, 43 *S.Ct.* 270, 67 *L.Ed.* 605. Avoidance of waste, in interstate transportation, as well as maintenance of service, have become a direct concern of the pub-

lic. With these ends the Minnesota statute, as here applied, unduly interferes. By requiring from interstate carriers general submission to suit, it unreasonably obstructs, and unduly burdens, interstate commerce."

In *Denver & R. G. W. R. Co. v. Terte, supra,* the Supreme Court applied the rule of the Davis case in a suit in a state Court begun by attachment against a foreign carrier for hire, not doing business in that state, where the suit was based on a foreign cause of action.

Petitioner has cited no cases according the immunity from suit to a corporation other than a carrier for hire, but it urges that the immunity is not limited to carriers for hire and that the reasons for the rule are as applicable to it as to such a carrier. In support of this, petitioner refers to *Hansell: The Proper Forum for Suits Against Foreign Corporations,* 27 *Col. Law Rev.* 12; *McGowan: Litigation as a Burden on Interstate Commerce,* 33 *Ill. Law Rev.* 875, 1 *Beale on Conflict of Laws, pp.* 377, 378.

[5] We think the immunity principle evolved in the Davis case and followed in subsequent cases does not apply to a private business corporation such as petitioner, even though it engages extensively in interstate commerce and transports its own materials and products across state lines, and even though subjection to suit would substantially impair the efficiency of its operations in interstate commerce. We agree that the immunity principle is based upon a finding of an unreasonable burden on interstate commerce. But, the cases do not, in our view, sanction the finding of such a burden as to invoke the principle wherever it may appear that the efficiency of any business activities in interstate commerce would be substantially impaired by subjection of a foreign corporation to suit on a foreign cause. As we understand the reasoning of the Supreme Court, the conclusion that subjection to suit would impose an undue bur-

den was grounded not only upon anticipated impairment of efficiency of interstate activities; but as well upon the particular kind of interstate activities under consideration (those of a carrier for hire) and the public interest and concern with the maintenance of those activities. See quotation above from the Davis case. Petitioner is not a carrier for hire; and we are not persuaded that this Court should equate petitioner's activities and the interest of the public in their maintenance, with the activities of a carrier and the public interest in maintaining them; or otherwise make general a rule which, because of its application thus far and the reasons given by the Supreme Court for applying it, seems to us particular. We, therefore, hold that the exercise of jurisdiction over petitioner in the three law actions would not constitute an unreasonable burden on interstate commerce so as to violate the commerce clause.

Petitioner's last point is that if Section 4631 be construed to authorize the attachments here, it would deprive petitioner of property without due process of law in violation of the Fourteenth Amendment of the Federal Constitution. Petitioner says that because of the requirements of the due process clause, "a foreign corporation may * * * be held to answer only upon domestic causes of action," in the absence of express consent to be sued, citing *Simon v. Southern Railway,* 236 *U. S.* 115, 35 *S.Ct.* 255, 59 *L.Ed.* 492; *Old Wayne Mut. Life Ass'n of Indianapolis, Indiana, v. McDonough,* 204 *U. S.* 8, 27 *S.Ct.* 236, 51 *L.Ed.* 345; *International Shoe Co. v. State of Washington,* 326 *U. S.* 310, 66 *S.Ct.* 154, 90 *L.Ed.* 95, 161 *A.L.R.* 1057; 1 *Beale on Conflict of Laws* (1935) *p.* 380. The cases were proceedings in personam, not quasi in rem, as here. Petitioner describes this distinction as a difference in the form of process, summons or attachment, by which the actions were commenced. It then argues that in *Denver & R. G. W. R. Co. v. Terte,* 284 *U. S.* 284, 52 *S.Ct.* 152, 153, 76 *L.Ed.* 295, *supra,* the Su-

preme Court "held that the constitutional limitation upon state court jurisdiction originating in the commerce clause should apply whether the action was commenced by summons or attachment," quoting the following from the opinion: "The prohibition against burdening interstate commerce cannot * * * be evaded merely by attaching the property of the non-resident railroad corporation. Obviously, the burden and expense which the carrier must incur in order to make defense in a state where the accident did not occur has no relation to the nature of the process used to bring it before the court."

This principle, petitioner urges, "must apply with equal force where the constitutional limitation is found in the Fourteenth Amendment rather than in the commerce clause. The rule that a foreign corporation may not be required by virtue of the Fourteenth Amendment to defend a suit upon a foreign cause of action in a jurisdiction in which it does no business and has not consented to be sued, applies whatever the process by which it is sought to compel such a defense."

Petitioner's analogy seems to us inapt, and its conclusion unsound. The limitation upon suits against foreign corporations, derived from the commerce clause, is based upon a finding of a burden on interstate commerce, and does not relate to any jurisdictional doctrine specially applicable either to proceedings in personam or proceedings quasi in rem. On the other hand, the limitation upon suits against foreign corporations, derived from the Fourteenth Amendment is based on "consent" and "corporate presence" doctrines which, as is apparent from the discussion under the first point in this opinion, relate uniquely to jurisdiction in proceedings in personam against foreign corporations. Since these jurisdictional doctrines have no connection with proceedings quasi in rem, the constitutional limitation asserted by petitioner has no application here.

Our conclusion is that the motions to dismiss the petitions for writs of prohibition should be granted.

An order accordingly will be entered in each case.