**James P. D'ANGELO, Receiver for Papantla Royalties Corporation, a dissolved Delaware corporation, Plaintiff,**

v.

**PETROLEOS MEXICANOS, a decentralized institution pertaining to the Republic of Mexico, Defendant.**

**Civ. A. No. 74–17.**

United States District Court,
D. Delaware.

June 12, 1974.

See also D.C., 373 F.Supp. 1076.

William H. Bennethum, Wilmington, Del., for plaintiff.

Arthur G. Connolly, Jr., Connolly, Bove & Lodge, Wilmington, Del., for defendant, and Timothy P. Walsh, Hardin, Hess & Walsh, New York City, of counsel.

Walter L. Pepperman, II, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for Mobil Oil Corp.

## OPINION

STEEL, Senior District Judge:

Plaintiff, James P. D'Angelo, is the receiver of Papantla Royalties Corporation ("Papantla"), a dissolved Delaware corporation, appointed by order dated December 21, 1956, of the Court of Chancery of Delaware. He has brought an action against the defendant, Petroleos Mexicanos, a decentralized governmental agency of the Republic of Mexico, a nonresident of the United States, for an order requiring the defendant to account to the plaintiff for oil produced from wells in Mexico in which he claims that Papantla and plaintiff have royalty or participation interests. The complaint alleges that the defendant was created by the Mexican government to

manage and handle privately owned oil properties then existing in Mexico which it had seized on or about March 18, 1938, for the purpose of nationalizing the oil industry. The complaint alleges further that at the time, Papantla was the owner of certain oil royalties and participation rights in certain of the properties so expropriated by the Mexican government, but that those rights were never expropriated by the defendant or the Republic of Mexico. Further, the complaint alleges that the amount in controversy exceeds the sum of $10,000, exclusive of interest and costs, and is between a citizen of a state of the United States and a citizen of a foreign state and hence within the jurisdiction conferred by 28 U.S.C. § 1332(a)(2).

The defendant has not appeared generally, but jurisdiction over property allegedly belonging to it was purportedly obtained by sequestration pursuant to 10 Del.C. § 366, Rule 4(db) [1] of the Delaware Court of Chancery, Del.C.Ann., and by a sequestration order of this Court dated January 28, 1974.

The defendant, "appearing solely for the purpose of challenging the jurisdiction of this Court", filed a motion to dismiss the complaint, (a) for lack of the Court's subject matter jurisdiction, and (b) because plaintiff lacks authority to file the suit, and also a motion to vacate the sequestration order.

Mobil Oil Corporation ("Mobil"), whose alleged indebtedness to the defendant has been purportedly sequestered has also filed a motion which seeks to vacate the sequestration and/or dismiss the complaint. It has agreed to confine itself to the points embraced in the motion of defendant.[2]

This Court has jurisdiction over the subject matter of the suit for the reasons stated in the Court's order of March 19, 1974, and the authority of plaintiff to institute and prosecute the suit and to retain William H. Bennethum as his attorney for the purpose was confirmed by the order of Vice-Chancellor William Marvel dated April 16, 1974.

The motions of defendant and Mobil to vacate the sequestration order remain to be determined. The property sequestered purports to be an indebtedness owed on open account by Mobil to the defendant based upon sales of crude oil to Mobil by defendant. The several grounds of the motion to vacate the sequestration order are:

1. The information used by plaintiff to obtain the sequestration order in this action was procured in a prior suit in the Court of Chancery in violation of both Delaware law and the Fourth Amendment of the United States Constitution and is thus "fruit of the poisonous tree."

This argument raises two questions: was the sequestration order in the Chancery action improperly procured; and if it was, does the information that Mobil is indebted to defendant, obtained by plaintiff as a result of that order, bar any use of that information by the plaintiff as a basis for sequestering the indebtedness in the present action?

The bases for the Court of Chancery's issuance of the initial sequestration order are 10 Del.C. § 366, Chancery Rule 4(db),[3] and the affidavit of plaintiff. The latter states:

> "Upon information and belief, the source of which is the defendant itself, plaintiff's Mexican counsel, Roscoe B. Gaither, and the Corporation Division of the office of the Secretary of State of the State of Delaware, the property sought to be seized in which the defendant has a legal and equitable interest, consists of contractual obligations, rights, debts and credits which are due or will become due and which have accrued to or for the benefit of the said defendant under certain

---

1. Relevant portions are set forth in the Appendix to this opinion, *infra*.

2. See Paragraph 3 of the order of this Court dated February 26, 1974.

3. See Appendix, *infra*.

agreements, contracts or legal instruments made between the said defendant as the seller of crude oil and the following oil companies (all of whom are either incorporated in Delaware or foreign corporations duly qualified to do business in the State of Delaware) as the buyers of said crude oil:"

Thereafter the affidavit names six Delaware corporations and four foreign corporations qualified to do business in Delaware. Among the latter was Mobil. Of the ten named companies only Mobil was shown by the return of the sequestrator to have been indebted to defendant. Later, the information so adduced was used in the affidavit which plaintiff filed in the instant case to obtain the sequestration order under which Mobil's indebtedness to the defendant was seized. The validity of the sequestration order in the Court of Chancery was not passed upon by the Court inasmuch as it dismissed the action upon the ground that the "Act of State" doctrine deprived the Court of subject matter jurisdiction. Since an appeal was taken to the Supreme Court of Delaware from the dismissal of the action, the vacation of the sequestration order which was ordered in connection with the dismissal, was stayed.

Defendant argues that the sequestration order obtained by plaintiff in the Chancery action was blatantly improper because the affidavit on which it was based did not satisfy the general requirement of Delaware law that it be specific as to the property sought to be sequestered. As a consequence, defendant asserts, the sequestration order, through the instrumentality of the sequestrator appointed by the Court, was wrongfully used as a dragnet to catch whatever property of defendant's fell within its meshes.

■ The affidavit filed by plaintiff met the Delaware requirement of specificity. It alleged, upon information and belief, that the defendant had a legal or equitable interest in debts or credits due or to become due to defendant from ten named companies of which Mobil was one. This allegation rested upon an adequate foundation.[4] No Delaware case has been cited, nor has any been found, which holds that a sequestration order is invalid and must be vacated if it was obtained upon an affidavit alleging that each of several corporations holds specified property belonging to a defendant, but the return of the sequestrator discloses that some of the property is held by some, but not all, of such corporations. The validity of the sequestration does not depend upon the property in fact sequestered coinciding with all of the property which plaintiff has attempted to sequester, as long as some of it does. Baker v. Gotz, 336 F.Supp. 197 (D.Del.1971), aff'd by an equally divided Court, 492 F.2d 1238 (3rd Cir. 1974), petition for cert. filed 42 U.S.L.W. 3612 (U.S. Apr. 25, 1974), cited by defendant, is clearly distinguishable. There the sequestration affidavit failed to state that any of the defendants owned any of the property which was purported to have been sequestered and for that reason the sequestration was vacated.

■ Defendant's Fourth Amendment argument is without merit. While Fourth Amendment rights have been invoked to shield individuals from arbitrary governmental invasions in cases essentially civil in nature, its application has not been extended to matters like the instant case involving an attachment or sequestration. The Third Circuit in Lebowitz v. Forbes Leasing and Finance Corporation, 456 F.2d 979 (3rd Cir. 1972), summarily dismissed a Fourth Amendment claim with regard to an attachment of bank deposits under the Pennsylvania foreign attachment procedures. Furthermore, the statement by the Supreme Court in Boyd v. United States, 116 U.S. 616, 624, 6 S.Ct. 524, 529, 29 L.Ed. 746 (1886), albeit dictum, still retains vitality:

"The entry upon premises, made by a sheriff or other officer of the law,

---

4. No view is expressed as to what the result might be if this had not been the case.

for the purpose of seizing goods and chattels by virtue of a judicial writ, such as an attachment, a sequestration, or an execution, is not within the prohibition of the Fourth or Fifth Amendment. . . ."

■ Moreover, plaintiff's affidavit describes with sufficient particularity the "thing[s] to be seized". There was no unreasonable seizure here. Because the sequestrator was unable to find all of the property sought to be seized, does not constitutionally invalidate the seizure of the Mobil indebtedness which is described in the affidavit.

In view of these determinations, it is unnecessary to decide whether a vacation of the sequestration in the instant case would be required because based upon information improperly obtained in the Chancery sequestration proceedings. It may be noted in passing, however, that Greene v. Johnston, 34 Del.Ch. 115, 99 A.2d 627 (Del.1953) at least suggests that the information might have been properly used as a basis for the sequestration order in the instant action, even if it had been improperly obtained in the Chancery action. See the rhetorical question posed by Chief Justice Southerland in *Greene* at p. 630.

2. The sequestration order purports to sequester property which is not the proper subject of sequestration since the property is not located in Delaware.

Mobil, whose indebtedness to defendant purports to have been sequestered, is a foreign corporation qualified to do business in Delaware. So far as the record discloses Mobil has never done business in Delaware, the indebtedness owed by it did not arise out of any transaction in Delaware, and was not payable in Delaware.

Defendant argues that only property having a situs in Delaware is subject to sequestration and that only debts of Delaware corporations have a situs here. It is true that on several occasions Dela-

ware courts have said that debts, when owed by Delaware corporations, have a situs here. Weinress v. Bland, 31 Del. Ch. 269, 71 A.2d 59, 64 (1950); Jacobs v. Tenney, 316 F.Supp. 151, 166 (D.Del. 1970). But neither case holds that a debt may not be sequestered if it is owed to a non-resident defendant by a non-resident when the latter is subject to process in Delaware.

Defendant's argument is founded upon a theory of situs. Weinress v. Bland, however, stated that the concept of situs, while applicable to tangibles, is anomalous and unrealistic when related to intangibles.[5] The Court said at p. 64 of 71 A.2d:

"An attempt to deal with the 'situs' of an intangible by the employment of concepts which grew out of disputes involving tangibles only tends to obscure the realities. Control of the debtor is important because the court can effectively tell him whom he must pay. . . .

A reading of the decisions of the United States Supreme Court, Harris v. Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023; Chicago, Rock Island & P. Railway Co. v. Sturm, 174 U.S. 710, 19 S.Ct. 797, 43 L.Ed. 1144, shows that a state has jurisdiction, if it cares to exercise it, to garnish any debt owed by a person subject to its process, and that such garnishment is not only constitutional but will be entitled to full faith and credit. Delaware, therefore, has jurisdiction of a type. . . ."

Since in *Weinress* the debt seized was owed by a Delaware corporation, the above quotation may be said to be dictum. The fact is, however, that Chancellor Seitz, who wrote the opinion, recognized the critical importance of control over the debtor and not the fictional concept of situs in determining the validity of a sequestration, not only by what he said but also by his reference to Harris v.

---

5. Stock (as distinct from certificates of stock) of Delaware corporations, although an intangible, is nonetheless deemed to have situs in Delaware for a number of purposes. This is due to legislative mandate. 8 Del.C. § 169.

Balk, 198 U.S. 215, 25 S.Ct. 625, 49 L.Ed. 1023 (1905). There the Court held that an indebtedness due from a garnishee residing in North Carolina to the defendant who resided in North Carolina, could be garnished in an action in Maryland. The Court stated that the situs of the garnishee's indebtedness was irrelevant since the garnishee was found in Maryland and process was personally served upon him there. "Power over the person of the garnishee," the Court said, "confers jurisdiction on the courts of the State where the writ issues." 198 U.S. at 222, 25 S.Ct. at 626.

Harris v. Balk involved foreign attachment at law and not sequestration in equity. This distinction is not material. Sequestration in equity is simply analogous to foreign attachment at law. In Weinress v. Bland, (a sequestration case) by its approving citation of Harris v. Balk, (a foreign attachment case) Chancellor Seitz recognized that the principles applicable to the two writs were the same in the area under discussion.

It has long been the general rule in Delaware that the test of the validity of a foreign attachment of an indebtedness due from a garnishee to a non-resident defendant is whether the defendant has the right to sue the garnishee in Delaware to recover the debt. If he does the attachment is valid; if he does not the indebtedness is beyond the reach of the attachment writ. 2 Woolley, Delaware Practice § 1179, p. 809.[6] Netter Bros. v. Stoeckle, 4 Penne. (20 Del.) 345, 348–349, 56 A. 604 (Del.Super.1903). This principle, basic to testing the validity of a garnishment, was stated thus in Harris v. Balk at 222, 25 S.Ct. at 626:

> "If, while temporarily there [in the forum jurisdiction], his [the garnishee's] creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the *situs* of the debt was orig-

inally. We do not see the materiality of the expression '*situs* of the debt' when used in connection with attachment proceedings."

■■ Under this test the sequestration of Mobil's indebtedness to defendant is unquestionably valid. Mobil is a foreign corporation which is qualified to do business in Delaware under 8 Del.C. § 371 (1968 Cum.Suppl.). Service of process upon a qualified foreign corporation may be made upon its registered agent. 8 Del.C. § 376 (1968 Cum.Suppl.). The sequestration order was served upon Mobil's registered agent. Section 376 does not in terms limit the amenability to service of a qualified foreign corporation to one which does business in Delaware or with respect to a cause of action arising in Delaware. By the generality of its terms, a foreign corporation qualified in Delaware is subject to service of process in Delaware on any transitory cause of action.[7] This is emphasized by a comparison of § 376 with 8 Del.C. § 382 (1968 Cum.Suppl.) which is applicable to non-qualified foreign corporations. The latter provides for service upon a non-qualified foreign corporation only if it transacts business in Delaware, and the proceeding against it arose or grew out of business transacted in Delaware. Simpson v. Thiele, Inc., 344 F. Supp. 7 (D.Del.1972). The debt which Mobil owed the defendant gave rise to a transitory cause of action for which the defendant could have sued and served Mobil in Delaware. It was, therefore, subject to sequestration.

The defendant argues that National Bank of Wilmington & Brandywine v. Furtick, 2 Marv. (Del.) 35, 42 A. 479 (Ct.Err. & App.1897) compels a different conclusion. The *Furtick* action was begun in Delaware by foreign attachment. The defendant was a resident of South Carolina, and an indebtedness owed to defendant by a British insurance

---

6. The statement was made in discussing the executive writ of attachment fi fa. The principles are equally applicable to the writ of foreign attachment. 2 Woolley, Delaware Practice, §§ 1286, 1288, pp. 871–872.

7. This is the rule generally. See 18 Fletcher Cyclopedia Corporations § 8665 (1969 ed.).

company was purportedly garnished. The debt was admitted to be due and arose from a fire loss on property in South Carolina which the garnishee had insured under a policy written by its agent in South Carolina. Customarily the garnishee paid insurance claims in the state where a loss occurred, and the defendant's claim under the usual procedures would have been paid to the defendant in South Carolina. The writ of foreign attachment was served upon the Delaware agent of the garnishee appointed pursuant to the general insurance law, 16 Del.L., ch. 347, § 7. Upon a motion of the garnishee, the Court of Errors and Appeals, the highest court in Delaware at that time, held that the attachment should be vacated.

The Court assigned three grounds for its decision.[8] As a first ground the Court held that the agent of the garnishee who had been served was not a person authorized by the attachment statute, 18 Del.L., ch. 681. It then proceeded to the next ground, stating that to subject to foreign attachment a debt owed to a non-resident, it must be within the jurisdiction of the Court, and that the situs of a debt is the domicile of the creditor, unless otherwise stipulated. Exceptions to the rule were drawn by the Court at p. 483:

> "An exception to this rule appears to be where the garnishee is a resident of the state where the proceedings are instituted, and is under the exclusive jurisdiction of that state, and as a consequence under its power to determine for itself the rights and obligations arising from his contracts, and the mode of enforcing them; and possibly another exception is where a foreign corporation is doing business in a state, and the debt arose in re-

spect to such business, and where the corporation submits or subjects itself to the law of the state in the same manner and to the same extent in respect to such business as it would be bound to were it a corporation created by the state. We avoid expressing an opinion upon these cases." [9]

Continuing to the third ground, the Court said that even if it is not the situs of the "defendant" [10] that establishes jurisdiction, and even assuming that service has been made upon the proper statutory officer of the insurance company, still the attachment should be dissolved. *Furtick* at p. 483. In support of this ground, the Court noted that the insurance law provided that before a foreign insurance company would be permitted to do business in Delaware, the company had to appoint an agent in Delaware upon whom process could be served. The Court held that 16 Del.L., ch. 347, § 7 was not intended to authorize a non-resident of Delaware to sue a non-resident insurance company on a cause of action which arose outside of Delaware. At p. 484 it said:

> "When this statute was passed, the old law permitted the agents of any insurance company, foreign as well as domestic, to make contracts of insurance within the state under which causes of action would accrue to our own people within the jurisdiction of the state courts. The mischief was that the jurisdiction of the state courts over these causes of action would be unavailing except upon voluntary appearance, for want of power in the courts to compel appearance. The remedy provided was the requiring of any foreign insurance company making such contract to keep an agent in this state on whom service could be

---

8. Standard Oil Co. v. Superior Court, 5 Del. 538, 62 A.2d 454, 456 (1948). Earlier it had been said that the *Furtick* decision was based on two grounds. Forest Products Co. v. Magistrelli, 1 Terry 525, 4 A.2d 397, 398 (Del. Super.1940).

9. *Furtick* expressed no opinion as to the application of these exceptions to the case be-

fore it because, as to the first exception, the garnishee was not a resident of Delaware and as to the possible second exception, the indebtedness of the garnishee to the defendant did not arise in respect to business done in Delaware.

10. Query whether the Court meant "debt".?

made. This would be a full remedy for all that mischief, without requiring such companies to keep an agent here on whom any process for any purpose could be served. There could be no advantage obtained for the people of the state by providing means to give the courts of the state jurisdiction over causes of action that occurred out of the state in favor of persons not citizens of the state against a corporation existing out of the state; and it is not to be presumed that the legislature intended to accomplish that purpose unless that is the necessary result of the enactment. . . . The statute is not so explicit as to be clearly intended to require a foreign insurance company to submit to suits in this state having no relation to the business done within the state, nor with one of her citizens, or to suits brought by persons that are citizens of the state where the corporation was organized, or of some other foreign state."

The first and third grounds of the *Furtick* case have no relevance to the instant case based as they are upon the interpretation which the Court placed upon the insurance law, 16 Del.L. ch. 347, § 7, not involved here. The only possible application which the decision may have to the instant case is the second ground of the decision where the situs of an indebtedness owed to a non-resident defendant by a non-resident garnishee is discussed as a general proposition independently of the insurance statute. The Court's analysis was based upon a situs theory. This theory was later discredited by the U. S. Supreme Court in Harris v. Balk, *supra*. The logic of the Harris v. Balk theory, as against that in *Furtick*, was recognized in Weinress v. Bland, *supra*, at 63–64 of 71 A.2d. Furthermore, the "possible exception" to the jurisdictional situs rule referred to in the second ground of the *Furtick* decision simply embodied the interpretation which the *Furtick* opinion placed upon the insurance law in the third ground discussion.[11]

The real point dealt with in *Furtick* was whether a debt owed by a foreign insurance company to a non-resident of Delaware arising out of business which took place outside of Delaware was subject to attachment. This depended upon a construction of the then existing insurance law.

Mobil, whose indebtedness has been sequestered, is not an insurance company. Its amenability to service is governed by 8 Del.C. § 376 (1968 Cum. Suppl.) which, as previously stated, does not require that Mobil be doing business in Delaware or that the cause of action giving rise to the debt arise in Delaware. The fact that the debt sequestered may have been payable outside of Delaware is not important. Weinress v. Bland, *supra*, at 64.

3. The sequestration order is unconstitutional under the due process clause of the United States Constitution. The defendant has withdrawn this argument by letter to the Court dated February 28, 1974.

4. The action is barred under the doctrine of res judicata by the decision of the Court of Chancery which dismissed the complaint. This is not a ground which the defendant has asserted in its motion to vacate the sequestration but is asserted in its brief. This motion was made by the defendant "appearing solely for the purpose of challenging the jurisdiction" of the Court. In effect it was made under a special appearance. The res judicata argument is beyond the scope of the motion to vacate the sequestration and will not be considered by the Court in connection with that motion.

The motion of the defendant to vacate the sequestration order is denied.

---

11. In Standard Oil Co. v. Superior Court, 5 Del. 538, 62 A.2d 454 (1948), the Court, in discussing the third ground of the *Furtick* decision stated that *Furtick* had construed the insurance statute, 16 Del.L. ch. 347 as being "inapplicable to an action by a nonresident, not arising out of business done in Delaware". 62 A.2d at 456.

## APPENDIX

### § 366. Compelling appearance of non-resident defendant

(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Court directs, not less than once a week for three consecutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. . . .

\*      \*      \*      \*      \*      \*

*Rule 4(db) Service by Publication and Seizure.* (1) No order shall be entered under 10 Del.C. § 366 unless it appears in the complaint that the defendant or any one or more of the defendants is a non-resident of the State of Delaware and the application therefor is accompanied by the affidavit of a plaintiff or other credible person stating:

(a) As to each non-resident defendant whose appearance is sought to be compelled, his last known address or a statement that such address is unknown and cannot with due diligence be ascertained.

(b) The following information as to the property of each such defendant sought to be seized:

(1) A reasonable description thereof.

(2) The estimated amount and value thereof.

(3) The nature of the defendant's title or interest therein; and if such title or interest be equitable in nature, the name of the holder of the legal title.

(4) The source of affiant's information as to any of the items as to which the affidavit is made on information and belief.

(5) The reason for the omission of any of the required statements.