## ANNIE L. COLBERT

*vs.*

## JAMES F. SUTTON and JOSEPH L. CARPENTER.

New Castle, Feb. T. 1880.

*Fraudulent conveyances of personal property; conveyances pendente lite or to defeat execution; subjection of corporate stock to satisfaction of judgment.*

1. A voluntary conveyance *pendente lite*, or by a person against whom an action for damages, etc., or suit in chancery, is pending, and which he must have known would probably go against him, is always open to the imputation of fraud.

2. A mere voluntary conveyance for the purpose of defeating an expected execution or other process for recovery of debts is invalid; and even as to conveyances, etc., on valuable consideration, the fact that they were made for such a purpose *pendente lite* has been regarded as a circumstance of fraud.

3. But, up to the day of delivery of the writ of execution, the debtor may sell his property, provided it is not a mere trick or the consideration a sham.

4. If a conveyance be made with intent to delay, hinder or defraud creditors, it is void as against them, although there may be in the strictest sense a valuable or even an adequate consideration.

5. Though there be a judgment against the vendor, and the purchaser has notice of it, that fact will not of itself affect the validity of a sale of personal property; but if the purchaser, knowing of the judgment, purchases with the view to defeat the creditor's execution, the sale is iniquitous and fraudulent, notwithstanding he may have given a full price, for it is assisting the debtor to injure the creditor.

6. The question of fraud depends upon the motive.

7. The conveyance cannot be impeached by proof of a fraudulent intent on the part of the grantor, unless it is known to the grantee.

8. Under the Delaware Statute of Frauds, it is essential to the validity of the sale of personal property (except as against the vendor) that, in addition to the payment of a valuable consideration, there be an actual delivery of possession to the vendee so soon as conveniently may be after the sale.

9. In order to make a voluntary settlement or conveyance void as against creditors, it is indispensable that it should transfer property which can be taken in execution for the payment of debts.

10. Under the laws of Delaware, stock in incorporated companies, with all the rights thereto belonging, is liable for the satisfaction of debts —*i. e.,* to execution—and hence transfers of such stock may be void for fraud as against creditors.

11. The above principles applied, and a sale and assignment of certificates of stock in the Wilmington City Market Company, and of the market stalls represented by such certificates, declared fraudulent and void as against a judgment creditor of the vendor, and the stock and stalls represented by such certificates subjected to payment of the judgment, where the sale had been made on the day or the day after judgment had been recovered against the vendor in an action which had been on trial for the two preceding days (during which time the sale was arranged, and of which trial and judgment the vendee had knowledge), for a consideration exactly equal in amount to the judgment, and not followed by a change of possession of the stalls.

BILL TO SET ASIDE A SALE OF PERSONAL PROPERTY BY A JUDGMENT DEBTOR, AND TO SUBJECT THE PROPERTY TO PAYMENT OF JUDGMENT.—The facts and questions presented are fully stated in the opinion.

*Anthony Higgins.* and *Edward G. Bradford* for the complainant.

*Charles B. Lore* for the defendants.

THE CHANCELLOR.—The material facts in this case seem to be that Sutton, one of the defendants, claimed right, title and interest in stalls 15, 17, 47, 49, 68, and 70 in the city market-house of Wilmington, together with all stock representing said stalls.

He had paid upon each share of stock $20, owning then only stalls 15, 17, 47, and 49. Numbers 68 and 70 he bought, after the building of the city market-house, for $535.

Sutton went to Carpenter on the morning of the 7th of December, 1876, and told him that he did not know how the suit of the complainant against him, then being tried in the

superior court at New Castle, might terminate, but he had made up his mind to sell the stalls.

Carpenter purchased the stalls, with all stock representing said stalls, and Sutton transferred the same to him by an instrument of writing bearing date the 7th day of December, 1876. The consideration price was $3,500, for which amount Carpenter gave his note to Sutton, payable at the Brandy-wine Bank, in the city of Wilmington. At the time of said sale and purchase, a suit of the complainant against Sutton was pending, and being tried in said superior court, which was known to both of the defendants. The defendant Sutton was in the court room late on the afternoon of that day, and left but a short time before the court adjourned to meet the next day to resume the trial of the said cause. He, early on the morning of December 8, being the day after he had been in the court room watching the progress of the trial of the case of the complainant against him, looked up Carpenter, manifesting much anxiety to find him, and when he did find him, telling him he did not know how the suit against him would terminate, and that he had made up his mind to sell the stalls, and proposed to sell the same to Carpenter, who, being thus apprised of Sutton's object in selling them, must be held as purchasing them with knowledge of the intent with which Sutton desired to sell them.

Under these circumstances and with this knowledge, Carpenter purchased the stalls and his right to the certificates representing them from Sutton, on the morning of the day, or the day thereafter, on which a judgment of the complainant against Sutton was recovered for $3,500.

Sutton was in possession of the stalls when he sold them to Carpenter, either personally or by his tenants, and has continued so in possession thereof ever since.

On December 20, 1876, by articles of agreement between them, Sutton rented of Carpenter stalls 47 and 49 at the annual rent of $260, and has ever since been in their possession.

The note of Carpenter to Sutton appears, by the testimony

of Carpenter, to have been paid at two different times,—
the first payment of $1,800 being not more than two or three
weeks before Carpenter's examination before the examiner,
in July, 1878; and the second payment of $1,700 being not
more than a week or ten days after the first payment.

The rent of the stalls was allowed upon settlement of the
note ; and the excess of the rent over the interest on the note,
Carpenter states was paid in cash by Sutton.

Under these circumstances the conviction seems to be
irresistible that the sale by Sutton to Carpenter was with the
intent to defraud, hinder and delay the complainant of her
suit, judgment, and execution thereon ; and these circum-
stances are sufficient to charge Carpenter with knowledge of
the fraudulent intent of Sutton in making the sale.

Sutton never had any certificates of stock or shares in the
capital stock of the said city market-house company, but he
was entitled to them ; and on the 22d day of March, 1877,
certificates Nos. 15, 17, 47, 49, 68, and 70, for ten shares each
in said capital stock, were issued to the said Carpenter by said
company.   These certificates were not in themselves prop-
erty in the stalls, or the right to the stock of the company ;
they were only the evidence of title to the stock, and repre-
sented said several stalls.

The bill of complaint alleges, and such appears to be the
fact from the proof in the cause, that the only other prop-
erty owned by Sutton was a slaughter-house in the city of
Wilmington, which was covered by mortgage and judgment
lien to its full value.

The material prayer of the bill is that the said sale, trans-
fer, or assignment of said market-house stalls, and of the cap-
ital stock of said city market-house company, be decreed, as
respects the complainant and her rights by virtue of her
judgment aforesaid, to be fraudulent, void, and of no effect ;
and that either said stalls be decreed the property of the said
Sutton, or that the said defendant Carpenter be decreed to
hold said stalls and stock for the benefit of said complainant.

In the joint and several answers of the defendants, Sutton

denies that he was the owner of stalls 15, 17, 47, 49, 68, and 70, or the holder of shares of stock therein, as alleged, and says that he had only a contingent right therein, which he alleges was not subject to execution under any judgment to be obtained by the complainant; and both defendants say that the sale by Sutton to Carpenter was for the full market value of Sutton's interest in said stalls and stock; and that the sale was *bona fide* and in no respect fraudulent.

This allegation, it is charitable to suppose was founded on the erroneous idea that certificates of stock constituted a right to the stock itself; whereas, such certificates are only evidence of right to the stock, represent the stock, and are not the stock itself or constitute the right to the stock. They only represent it. A person paying the price of the stalls is entitled to the certificates, and may demand them.

There is a difference of opinion among the witnesses, in respect to the true value of the stalls and stock; and it would be difficult to determine from their testimony whether the price agreed upon between Sutton and Carpenter was or was not below the fair market price of Sutton's interest, sold by him to Carpenter.

There is a mysterious coincidence between the price agreed upon for that sale and the amount of the judgment recovered by the complainant against Sutton. The precise moment of the recovery of the judgment or of the sale is not proved. The amount of each was precisely the same.

Wilmington, where the contract of sale was made, and New Castle, where the verdict was rendered upon which judgment was entered, were only about five miles apart. News flies fast. Swiftly as thought the lightning flashes it. Fraudulent intention may be quickly followed by fraudulent action. It is proper that courts of justice, in attempting to discover the existence of fraud, should attentively consider and narrowly watch its footprints, and scan every probability and even possibility of its commission.

Three questions arise in this case: 1. Was the sale by Sutton to Carpenter made to the end, purpose and intent to

delay, hinder or defraud the complainant? 2. If the sale by Sutton to Carpenter had not been made, and Sutton's interest in the stalls and stock had continued in him unsold, would the same have been subject to the execution of the complainant on her said judgment? 3. Had Carpenter, the alleged purchaser of the stalls and stock, knowledge of the fraudulent intent of Sutton, and by purchasing as aforesaid did he aid or intend to aid in the consummation of that fraudulent intent?

The following principles, solemnly adjudged and supported by numerous authorities, have relevancy in the consideration of these questions:

A voluntary conveyance *pendente lite,* or by a person against whom an action for damages, etc., or suit in chancery, is pending, and which he must have known would probably go against him, is always open to the imputation of fraud.

A mere voluntary conveyance for the purpose of defeating an expected execution or other process for recovery of debts is invalid; and even as to conveyances, etc., on valuable consideration, the fact that they were made for such a purpose, *pendente lite,* has been regarded as a circumstance of fraud.

But up to the day of delivery of the writ of execution, the debtor may sell his property, provided it is not a mere trick or the consideration a sham.

If a conveyance be made with intent to delay, hinder or defraud creditors, it is void as against them, although there may be in the strictest sense a valuable or even an adequate consideration.

Cases have frequently occurred in which persons have given a full and fair price for goods, and where possession has followed the sale; yet, being done for the purpose of delaying and defeating creditors, the transaction has been held fraudulent, and has been set aside as against them.

Though there be a judgment against the vendor, and the purchaser has notice of it, that fact will not of itself affect the validity of the sale of personal property; but if the pur-

chaser, knowing of the judgment, purchases with the view to defeat the creditor's execution, it is iniquitous and fraudulent notwithstanding he may have given a full price, for it is assisting the debtor to injure the creditor.

The question of fraud depends upon the motive. Burr. 474; Coop. 434; Taunt. 678; 2 Bailey, 324; *Hickman* v. *Quinn*, 6 Yerg. 96; *Bullock* v. *Gordon*, 4 Munf. 450; *Thornton* v. *Davenport*, 2 Ill. 296; *Williams* v. *Jones*, 2 Ala. 314; *Clemens* v. *Davis*, 7 Pa. 263.

The conveyance cannot be impeached by proof of a fraudulent intent on the part of the grantor, unless it is known to the grantee.

In order to make a voluntary settlement or conveyance void as against creditors, it is indispensable that it should transfer property which will be liable to be taken in execution for the payment of debts.

Under the old law a voluntary settlement of stock, choses in action, or other property not liable to execution, was not within the statute. The reason of this is that a settlement of property which creditors could not reach by legal process cannot be fraudulent against them. Although this was the old law in respect to stocks of incorporated companies, it is not the law now, even in England. 1 Vict. chap. 100. The law, even there, in respect of certain property being changed, the liability of the property for the payment of debts is also changed in accordance with the spirit of the Statute of Elizabeth. To convey away property against which an execution can issue is a fraud upon creditors, but not to convey away that against which execution cannot issue. By successive statutes in England, giving creditors power over different kinds of property, the operation of 13 Elizabeth has been gradually extended. It is unnecessary to dwell longer on these principles or the authorities by which they are supported. They all may be found in the learned work of May on Fraudulent Conveyances.

There was no change of possession following the transfer of these stalls, or agreement for their transfer as well as for

the transfer of the stock in the Wilmington market-house company.

The Statute of Frauds in this State (§ 4) provides that "No sale, whether with or without bill of sale, of any goods or chattels within this State, shall be good in law (except as against the vendor), or shall change or alter the property in such goods or chattels unless a valuable consideration shall be paid, or in good faith secured to be paid, and unless the goods and chattels sold shall be actually delivered into the possession of the vendee, as soon as conveniently may be, after the making of such sale."

By the Code of this State, chap. 70, § 13, stock in any incorporated company, with all the rights thereto belonging, is made liable for debt or other demands. It may be attached and sold at public vendue, upon an order issued therefor by the court from which the attachment process issued, and after such notice as is required for sales on execution process. So that even at law there can be no doubt that such property is liable for the satisfaction of debts and other demands.

Believing, from the proofs in this cause, that the alleged sale and assignment of the said stalls and the certificates of stock representing the same, were made by the said Sutton, to the said Carpenter, with the intent to defraud, hinder and delay the said complainant of her said judgment and execution thereon, issued or to be issued, and treating the word "execution" in the practical sense, as being the method whereby a party entitled to the benefit of a judgment may obtain that benefit,—I shall decree that the assignment of the said stalls and certificates representing the same is fraudulent as against the said Annie L. Colbert, the plaintiff in said judgment in the superior court, and the complainant in this cause, and that the said stalls and the said certificates of stock be conveyed or assigned by the said Joseph L. Carpenter to a proper person to be appointed by this court; and order that the same be sold at public sale by the person so appointed, that the money arising from said sale may be

applied to the payment of the said judgment, and the interest and costs thereon due, or so much thereof as may be necessary for the payment of the same.

Let a decree be drawn accordingly.