FRANCES B. GREENE and MYRON L. GREENE, Executors under the last will and testament of Louis A. Greene, deceased.
Plaintiffs below, Appellants,

*vs.*

OSWALD L. JOHNSTON, FLOYD B. ODLUM and AIRFLEETS, INC., a Delaware corporation,
Defendants below, Appellees.

*Supreme Court, On Appeal, October 16, 1953.*

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, JJ., sitting.

*Robert C. Barab,* of Wilmington, and *Paul Roberts,* of New York City, for appellants.

*Caleb S. Layton* (of Richards, Layton & Finger), of Wilmington, and *Simpson, Thacher & Bartlett,* of New York City, for appellees.

SOUTHERLAND, Chief Justice, delivering the opinion of the court:

The essential question before us is whether an equitable interest in shares of stock, not appearing of record on the books of the issuing corporation, may be seized in the Court of Chancery by the mesne proceedings authorized by 10 *Del.C.* § 366.

This is a minority stockholders' derivative action on behalf of Airfleets, Inc., a Delaware corporation, against five individuals, directors of the corporation, to redress wrongs alleged to have been committed by them upon the corporation. The complaint includes a prayer for an accounting in respect of certain profits and damages.

All of the directors are nonresidents. In order to subject three of them, Odlum, Johnston and Rockefeller, to the jurisdiction of the court the complaint invoked the provisions of 10 *Del.C.* § 366, providing for the seizure of the property of nonresidents to compel appearance, and prayed for a writ of sequestration.

The Chancellor entered an order providing in substance (so far as here pertinent) as follows:

The three defendants were directed to appear and answer the complaint; a sequestrator was appointed for all of the shares of stock of Airfleets standing in their names "or in or to which all or any of them may have or hold any right, title or interest"; the sequestrator was directed to notify Airfleets of his appointment and to demand from Airfleets a statement of the number of shares of stock held or owned or standing in the names of any of the three defendants "or in or to which all or any of them have any right, title or interest, with the number or numbers of the certificate or certificates or other marks distinguishing the same"; and appropriate entries were directed to be made on the books of Airfleets showing that all such shares, rights

and interests were held by the sequestrator. Subsequently a second order of seizure, not here important, was entered.

These orders followed the established practice of the court under the statute. *Cf. Wightman v. San Francisco Toll-Bridge Co.,* 16 *Del.Ch.* 200, 142 *A.* 783.

The sequestrator duly served upon the corporation a notice of seizure and a demand for the statement required by the Chancellor's order. The resident agent delivered a certificate showing that the defendant Rockefeller held certain shares of Airfleets in his own name and the defendants Odlum and Johnston held no shares of record. Thereafter these two defendants by leave of the court appeared specially and filed a motion to vacate the seizure orders of the Chancellor on the ground that they were nonresidents and that neither of them was a stockholder of record of shares of stock in Airfleets. They will be hereafter referred to as "the defendants."

Thereafter the defendants, over objection, were required to answer interrogatories with respect to their beneficial ownership of shares of stock of Airfleets. The answers to these interrogatories disclosed that each defendant was the beneficial owner of certain shares of Airfleets registered in the names of brokers in New York City. On January 2, 1953, the sequestrator gave to Airfleets further notices of seizure. These notices set forth the number of shares beneficially owned by Odlum and Johnston, the names of the holders of record, and the numbers and dates of issuance of the certificates representing the shares.

The defendants' motion to vacate came on to be heard. Defendants urged that the court was without jurisdiction to seize their equitable interests in the stock because such interests did not appear on the books of the corporation. This question the Chancellor found it unnecessary to decide. He held that no effective seizure of stock beneficially owned had been made by the notices of the sequestrator given prior to January 2, 1953, because the sequestrator in such notices had done nothing to identify the stock interests to be seized except by reference to the names of the defendants and thus had failed sufficiently to identify the shares of stock intended to be seized.

As to the attempted seizure by the notice of January 2, 1953, he held first, that it had not been authorized by any order of court, and second, that the information obtained had been elicited from answers to interrogatories propounded solely for the purpose of determining whether jurisdiction had been established and that information so obtained could not be used to create jurisdiction.

He accordingly held that the attempted seizure by the notice of January 2, 1953, was also ineffectual and that the orders of seizure should be vacated. See *Greene v. Allen,* — *Del.Ch.* —, 96 *A.2d* 349.

Thereafter plaintiffs moved for an alias order of sequestration directing the seizure of the beneficial interests of the defendants Odlum and Johnston in the specific shares identified by the answers to the interrogatories above referred to. This motion was denied and an order was entered in accordance with the Chancellor's opinion.

Plaintiffs appeal. They assert (1) that the Chancellor erred in vacating the orders of seizure, and (2) that even if the orders were properly vacated, the Chancellor erred in refusing to issue an alias order.

The first question we must decide is whether the Chancellor was correct in holding that the information respecting the defendants' equitable ownership of stock elicited by the interrogatories could not be used to support either the seizures already attempted or an alias order directing a further seizure. If so, that is the end of the case here.

The reason for the Chancellor's conclusion is that the interrogatories to the defendants were allowed to establish jurisdiction but not to create it. But we find no order so limiting the use of the information sought. Defendants moved for a protective order postponing the answers until a time subsequent to the decision upon their motion to vacate the orders of seizure; but this motion was denied, and defendants do not seek to review it here. Thus plaintiffs obtained information upon which, in their view, jurisdiction could by further proceedings be established. We are at a loss to see how in law they can be barred from using it. And even if, as held by the Chancellor, it is improper to use the information in the pending suit, what would

prevent the plaintiffs from dismissing it and filing another? And what would prevent another stockholder from using the information in another and similar suit? We see no escape from the conclusion that the only result of the holding below is to invite circuity of action—certainly a result to be avoided in a court of equity.

The upshot of the matter is that the plaintiffs have the information they sought; they obtained it lawfully under a court order; and they are not prevented by any known principle of law from making use of it.

■ We are accordingly compelled to disagree with the reasoning upon which the Chancellor based his conclusion to refuse the issuance of an alias writ of sequestration. Even so, if the result reached is correct, the order must be affirmed. *Maurer v. International Re-Insurance Corp.*, 32 *Del.Ch.* —, 86 *A.2d* 360, 365.

This brings us to the defendants' principal contention, viz., that the Chancellor's order should be affirmed because the court below is without power to seize an equitable interest in shares of stock unless such interest appears of record on the stock books of the corporation. This contention requires an examination of the statutes pertinent thereto.

Mesne attachment (or, more properly, "sequestration") in equity was formerly unknown under Delaware law. *Skinner v. Educational Pictures Corp.*, 14 *Del.Ch.* 417, 129 *A.* 857. In 1927 the General Assembly conferred this power upon the court. 35 *Del.L.Ch.* 217. This statute, as amended, is now 10 *Del.C.* § 366, which reads:

"§ 366. Compelling appearance of nonresident defendant

"(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Court directs, not less than once a week for three con-

secutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults. Such property shall remain subject to seizure and may be sold to satisfy any judgment entered in the cause, unless security sufficient to the Court is given to secure the release thereof.

"(b) The Court may make all necessary rules respecting the form of process, the manner of issuance and return thereof, the release of such property from seizure and for the sale of the property so seized, and may require the plaintiff to give approved security to abide any order of the Court respecting the property.

"(c) Any transfer or assignment of the property so seized after the seizure thereof shall be void and after the sale of the property is made and confirmed, the purchaser shall be entitled to and have all the right, title and interest of the defendant in and to the property so seized and sold and such sale and confirmation shall transfer to the purchaser all the right, title and interest of the defendant in and to the property as fully as if the defendant had transferred the same to the purchaser in accordance with law."

Foreign attachment at law derives from colonial acts.[1] In their present form the statutes appear in 10 *Del.C.* § 3506 *et seq.* The statutes provide for the issuance of writs of foreign attachment upon affidavit showing nonresidence, in both contract and tort actions, and the writ directs the attachment of the defendant's "goods and chattels, rights and credits, lands and tenements." These sections of the Code do not otherwise attempt to define the species of property attachable by the writ.

Statutory authority for the attachment of shares of stock was conferred by the act of February 10, 1829. *7 Del.L.Ch.* 154. In its present form it appears in 8 *Del.C.* § 324, which reads:

1. For the historical development of foreign attachment in Delaware, see Judge Pearson's opinion in *Blaustein v. Standard Oil Co.,* 4 *Terry* (43 *Del.*) 449, 49 *A.2d* 726.

"§ 324. Attachment of shares of stock or any option, right or interest therein; procedure; sale; title upon sale; proceeds

"(a) The shares of any person in any corporation with all the rights thereto belonging, or any person's option to acquire the shares, or his right or interest in the shares, may be attached for debt, or other demands. So many of the shares, or so much of the option, right or interest therein may be sold at public vendue, to the highest bidder, as shall be sufficient to satisfy the debt, or other demand, interest and costs, upon an order issued therefor by the court from which the attachment process issued, and after such notice as is required for sales upon execution process. If the debtor lives out of the county, a copy of the advertisement shall also be forwarded by mail to his address if known, ten days before the sale, and shall be published in a newspaper published in the county of his residence, if there be any, and if the debtor be a non-resident, shall be published at least twice in a newspaper published in the county where the attachment process issued.

"(b) When shares of stock, or any option to acquire such or any right or interest in such, shall be so attached, a certified copy of the process shall be left by the officer with the president, cashier, treasurer, any director, or the resident agent of the corporation, who shall give the officer a certificate of the number of shares held or owned by the debtor in the corporation, with the number or other marks distinguishing the same, or in case the debtor appears on the books of the corporation to have an option to acquire shares of stock or any right or interest in any shares of stock of the corporation there shall be given the officer a certificate setting forth any such option, right or interest in the shares of the corporation in the language and form in which the option, right or interest appears on the books of the corporation, anything in the charter or by-laws of the corporation to the contrary notwithstanding. Service upon a corporate resident agent may be made in the manner provided in section 321 of this title.

"(c) If the shares of stock or any of them or the option to acquire shares or any such right or interest in shares, or any

part of them, be sold as provided in subsection (a) of this section, any assignment, or transfer thereof, by the debtor, after attachment so laid, shall be void. If, after sale made and confirmed, a certified copy of the order of sale and return be left with the president, cashier or treasurer, the purchaser shall be thereby entitled to the shares or any option to acquire shares or any right or interest in shares so purchased, and all income, or dividends which may have been declared, or become payable thereon since the attachment laid. Such sale, returned and confirmed, shall transfer the shares or the option to acquire shares or any right or interest in shares sold to the purchaser, as fully as if the debtor, or defendant, had transferred the same to him according to the charter and by-laws of the corporation, anything in the charter or by-laws to the contrary notwithstanding. No order of sale shall be issued until after final judgment shall be rendered in any case.

"(d) The money arising from the sale of the shares or from the sale of the option or right or interest shall be applied and paid, by the officer receiving the same, as by law is directed as to the sale of personal property in cases of attachment."

Defendants' contention in substance is that 10 *Del.C.* § 366, is a jurisdictional statute only, analogous to foreign attachment at law, and that it does not authorize the Court of Chancery to seize property unless such property is by applicable attachment laws subject to attachment and then only through the means provided for in the attachment statute; that the sole authority for attachment or sequestration of shares in this state is 8 *Del.C.* § 324; that the language of § 324 necessarily limits the attachment of equitable interests in shares to interests appearing of record on the books of the corporation; and that since the interests here sought to be seized are not interests of record the statute cannot be complied with and no seizure can be made.

Plaintiffs challenge this argument. They say that § 366 is complete in itself and authorizes the mesne seizure in equity of any property whatever, and by the means prescribed by the statute itself and appropriate to equity. Consequently, they argue, the Chancellor is

not limited by the attachment procedure prescribed by § 324, which is purely attachment at law and does not apply to equity.

But plaintiffs' argument, in the form in which it is made, cannot be accepted. *Section* 366, like § 3506, the comparable statute at law, does not undertake to enlarge the field of property subject to seizure. Thus, an unliquidated tort action is not attachable at law nor subject to seizure in equity. *McNeilly v. Furman, — Terry (— Del.)* —, 95 *A.2d* 267. As defendants correctly say, the purpose of § 366 is to confer upon the Court of Chancery a remedy analogous to foreign attachment at law. But in conferring the new power the General Assembly did not subject its exercise to the limitations applicable to like remedies at law. On the contrary, the import of the language of *Subsection* (*b*) is that the court may employ whatever means may conform to the powers and procedures of equity. As to the species of property subject to seizure, therefore, it must be construed in the light of the historic powers of equity to sequester and sell property interests for the payment of debts. If equity, like law, had no power apart from statute to seize shares of stock, its powers must be derived from § 324, and it would then be difficult to escape the conclusion that such powers must be exercised under the limitations imposed by § 324, whatever those limitations may be.[2]

But is it true, as defendants say, that apart from statute shares of stock were never subject to seizure and sale in equity? This assertion is the major premise of their argument. Of course shares of stock could not be attached at law. *Fowler v. Dickson,* 1 *Boyce* 113, 121, 74 *A.* 601. The process of attachment by which intangible property is taken in execution at law is wholly statutory. *Drake on Attachment,* § 244. But it is quite another thing to say that equity has no inherent power, apart from statute, to seize such property and apply it to the owner's debts. If, as a part of its inherent power to decree

2. In *Woods v. Spoturno, — Terry (37 Del.)* 295, 183 *A.* 319, it was held by the Superior Court that unrecorded equitable interests in stock are subject to attachment under § 324. This decision was reversed, — *Terry (38 Del.)* 378, 192 *A.* 689, the Supreme Court holding that as to equitable interests the statute was unconstitutional for failure to provide for adequate notice. Upon the questions raised by counsel with respect to these decisions we express no opinion.

an equitable execution, equity has such power, regardless of statute, it would necessarily follow that § 324 is not the source of that power, and that the restrictive provisions of § 324 in respect of the seizure of stock (if they are such) are inapplicable.

We must therefore inquire into the power of a court of equity, apart from statute, to subject to the payment of its owner's debts property not subject to execution and sale at common law.

In pursuing this inquiry we naturally first examine the cases of equitable execution, that is, creditors' bills.

We find at once a direct conflict of authority both in England and in the United States. See 14 *Am.Jur., Creditors' Bills,* § 76 (choses in action) and § 26 (shares of stock); 11 *Fletcher Cyc. Corporations,* § 5105; *note* in 32 *Ann.Cas.* 956 (choses in action), and 959 (shares of stock).

The opposing views are illustrated by the New York decisions. In *Donovan v. Finn,* 1 *Hopk.Ch. (N.Y.)* 59, 14 *Am.Dec.* 531, it was held that assets not subject to execution at law, such as stocks, credits and rights of action, could not be reached by a creditor's bill unless there existed an independent ground of equitable jurisdiction, such as fraud or breach of trust. In the later New York cases, however, this rule was not followed. *White v. Geraerdt,* 1 *Edw.Ch. (N.Y.)* 336; *Edmeston v. Lyde,* 1 *Paige Ch. (N.Y.)* 637; *Hosack v. Rogers,* 11 *Paige (N.Y.)* 603; *Storm v. Waddell,* 2 *Sandf.Ch. (N.Y.)* 494.

In *Edmeston v. Lyde, supra,* complainants had recovered judgments at law and filed a bill in equity for discovery and to obtain satisfaction of the judgment out of the equitable estate and choses in action of the defendants, which could not be reached by execution at law. The Chancellor said:

> "The debts, choses in action, and other equitable rights of the defendants may be assigned or sold, under the decree of this court, so as to vest an equitable interest in the purchaser, which will be protected both here and at law."

The decree adjudged that the complainants are entitled "to the proceeds of all the choses in action, stocks, property, estate, and effects of the defendants, either in law or equity."

In *Storm v. Waddell, supra,* the court said that the doctrine of *Donovan v. Finn, supra,* had not been followed. After reviewing the New York cases the court concluded:

> "I may therefore assume, that by the law of this state as settled more than twenty years before this case arose, an unsatisfied execution creditor had a right to file a bill in this court to compel payment of his debt out of the equitable interests and things in action of the judgment debtor."

To the same effect is *Grew v. Breed,* 12 *Metc. (Mass.)* 363.

In *Ager v. Murray,* 105 *U.S.* 126, 26 *L.Ed.* 942, a judgment creditor filed a bill in equity to subject to the payment of his debt the interest of his debtor in patent rights. The defendant had no real or personal property subject to execution at law but was the owner of sundry letters patent. Upholding equitable jurisdiction, Mr. Justice Gray said:

> "It has been said by an English text writer that 'A patent-right may be seized and sold in execution by the sheriff under a *fieri facias,* being in the nature of a personal chattel.' Webster, Pat., 23. We are not aware of any instance in which such a course has been judicially approved. But it is within the general jurisdiction of a court of chancery to assist a judgment creditor to reach and apply to the payment of his debt any property of the judgment debtor, which by reason of its nature only, and not by reason of any positive rule exempting it from liability for debt, cannot be taken on execution at law; as in the case of trust property in which the judgment debtor has the entire beneficial interest, of shares in a corporation, or of choses in action. McDermutt v. Strong, 4 Johns.Ch., N.Y., 687; Spader v. Davis, 5 Johns.Ch., N.Y., 280, and Hadden v. Spader, 20 Johns., N.Y., 554; Edmeston v. Lyde, 1 Paige, N.Y., 637; Wiggin v. Heywood, 118 Mass. 514; Sparhawk v. Cloon, 125 Mass. 263; Daniels v. Eldredge, 125 Mass. 356; Drake v. Rice, 130 Mass. 410."

It is to be observed that shares of stock in one respect more nearly resemble patent rights than choses in action, to which they are often analogized. *Howe v. Starkweather,* 17 *Mass.* 240, 243. A patent evidences a legal right; so does a share of stock. Both are assignable, but both are exempt at common law from execution process, not by reason of any positive rule or tenet of public policy, but by reason of their nature only, that is, because they are species of intangible property with which the common-law writs of execution were not adapted to deal.

We are in accord with the holdings in the cases above cited, notwithstanding what appears to be a dictum to the contrary in *Colbert v. Sutton,* 5 *Del.Ch.* 294, 300. It is difficult to reconcile the contrary rule with the undoubted power of equity to deal with equitable interests in property. An assignment of a chose in action not recognized at law is a species of such property. A bill to enforce an equitable assignment is a recognized head of equity jurisdiction. It seems inconsistent to say that equity may enforce such an assignment, not cognizable at law, and yet may not seize the property upon a creditor's bill.

As above indicated there are cases to the contrary. Whether they are numerically more numerous we do not undertake to say. On principle we prefer the rule announced in the cases above discussed.

In support of its argument that property exempt from attachment at common law may not be seized in equity, defendants cite *Provident Trust Co. v. Banks,* 24 *Del.Ch.* 254, 9 *A.2d* 260. This was an attempt by bill in equity to obtain equitable execution on property held in trust by a bank. In this state banks are exempt by statute from the operation of the attachment laws. It was held that the bill did not lie. The decision is of no aid to defendants. If we assume that an exemption from the attachment laws conferred by a statute announcing a rule of public policy is applicable to proceedings in equity as well as at law, yet the property we are here dealing with was never exempted from execution in this state by virtue of statute or rule of public policy. It was exempt only because, as we have said,

the common-law writs of execution were not adapted to deal with it. The *Provident Trust* case is not in point.

We have above adverted to the fact that the common-law writs of execution were not adapted to deal with the attachment and sale of intangible property. In equity the principal process (aside from attachment for contempt) to compel satisfaction of a monetary decree is the writ of sequestration. This is a writ directed to certain persons, called "sequestrators", conferring power upon them to seize the defendant's property. 2 *Daniell's Ch.Pl. & Pr.*, 1050; *Skinner v. Educational Pictures Corp., supra.* There is ample authority that this writ may be used for the seizure of choses in action, at least under certain circumstances. Again there appears to be a conflict in the English decisions respecting the seizure of choses in action. As stated by Daniell the English rule was that where the chose in action or the property sought to be sequestered was in the hands of a third party, it could not be sequestered if the third party disputed the debt or denied the title. 2 *Daniell's Ch.Pl. & Pr.*, 1052-1053. But the note to the text indicates that there is authority to the contrary. In Delaware this limitation on the power to sequester a chose in action has not been recognized. In *Hayes v. Hayes,* 4 *Del.Ch.* 20, an attachment to compel satisfaction of a decree had proved ineffectual. Complainant moved for a writ of sequestration. Chancellor Bates said:

> "I have no hesitation in granting the order, and will make it expressly apply to 'rights and credits' so that no doubt may arise from the form of the order and writ as to the power of the Court, in a proper case, to sequester a chose in action. Indeed, I have no doubt as to the existence of the power, though to make the sequestration effectual in some cases, a bill against the debtor may be necessary."

He also said:

> "On the return of the writ, the sheriff will specify the debts sequestered, and that he has summoned the debtor. If the latter answers, admitting the debt, his answer, and the order of the Court upon it, will make the sequestration effectual; if he disputes the debt, it can be reached by a bill."

In Maryland the right of a court of equity to sequester choses in action to satisfy a monetary decree in equity was upheld in the case of *Keighler v. Ward*, 8 *Md.* 254, in which the English rule was adopted. In that case certain funds in the hands of a third party had been seized and subjected to sequestration to satisfy a monetary decree. It was urged, among other things, that the writ could not be used for such a purpose. The Court of Appeals said:

> "But it is contended, that under no circumstances are *choses in action,* such as stock, debts, etc., subject to sequestration. This was, no doubt, at one time held. 8 Bacon's Abr., 632. But a different or modified doctrine now prevails, and it may be said to be the result of the best adjudged cases in England, that *choses in action,* under certain circumstances, may be sequestered. The chancellor's views upon this particular point are correct. It may be stated as a settled point, upon strict authority, that if the party in whose hands the *chose* is admits the debt to be due to the defendant, and is willing to pay the same over under the order of the court, it becomes thereby subject to sequestration, but not otherwise. 2 Daniell's Chan.Prac., 1261. 1 Hoffman's Chan.Prac., 157. White v. Geraerdt, 1 Edw.Ch., N.Y., 336, 340. Johnson v. Chippindall, 2 Sim., 55. 1 Beavan, 369."

We think that the inherent powers of a court of equity extend to the seizure and sale of intangible property.

This conclusion finds some support in the decisions and practice of the Court of Chancery under § 366.

In *Weinress v. Bland,* 31 *Del.Ch.* 269, 71 *A.2d* 59, the Court of Chancery held that in seizing a debt it is not controlled by the limitations applicable to garnishment at law, and may seize an unmatured debt. We agree with that decision.

As to the practice under § 366 for seizure of stock, it conforms more closely to procedure in equity than to the practice prescribed by § 324. In seizing shares of stock a statement or certificate from the corporation is required, but in other respects the procedure for attachment under § 324 has not been followed. The procedure is the issu-

ance and service of a writ of attachment *fi. fa.*, a copy of which, as required by the statute, is delivered to the corporation. Under § 366 stock is seized by (1) an order of the Chancellor appointing a sequestrator and (2) the filing of a demand by the sequestrator. No "process", in the usual sense of that term, is issued, although no doubt the corporation often receives or obtains a copy of the Chancellor's order. The existing practice in respect of the seizure of stock thus conforms to the ancient practice of sequestration in equity after final decree. It is quite true, as defendants say, that the statute nowhere mentions sequestration, and no doubt the Chancellor might have devised some other procedure to effect the seizure. *U. S. v. Loft, Inc., 25 Del.Ch.* 363, 19 *A.2d* 721. In *Hayes v. Hayes, supra,* Chancellor Bates borrowed from law the form of the writ of attachment *fi. fa.* But the point of the matter is that the statute in practice has been construed—and we think rightly—as not necessarily requiring the use of the procedure prescribed by § 324.

We accordingly hold that in seizing shares of stock the Court of Chancery is not governed by the provisions of attachment at law under 8 *Del.C.* § 324.

One other point must be noticed. Plaintiffs assert that by the orders of seizure entered below, and in any event by the demand of January 2, 1953, an effective seizure of the equitable interests of th defendants was made. We do not think so. *Rule* 4(*d*)(6) *of the Court of Chancery, Del.C.Ann.,* provides:

"No order of seizure shall be entered under the provisions of 1935 Code 4374,[3] unless application therefor is accompanied by the sworn statement of the plaintiff, or, if there be more than one plaintiff, by some one or more of them, setting forth the kind of property proposed to be seized under the order, a reasonable description thereof, its estimated amount and value, or, if any of these particulars cannot be stated, giving the reasons for the plaintiff's inability to state them. The statement above referred to may be made on information and belief, and when so made the source of the plaintiff's information shall be set forth.

3. Now 10 *Del.C.* § 366.

The court may in its discretion dispense with a compliance with all or any part of this rule in any cause, upon application to it stating the reasons therefor."

The purposes and effect of this rule, and the reasons for its adoption, are set forth in Chancellor Wolcott's opinion in *Cantor v. Sachs,* 18 *Del.Ch.* 359, 389-392, 162 *A.* 73, 85. Prior to the decision in this case no rules under § 366 had been adopted by the Court of Chancery. Pointing out the possible abuses of unlimited or indiscriminate seizure of property under this statute, the Chancellor said:

"Furthermore, some safeguard should be provided against what for want of a better term I may call fishing expeditions. It seems to me that complainants who seek to bring their adversaries into court by seizure of their property ought to be prepared to say with reasonable certainty what property they desire to have seized. It is hardly comportable with the dignity of the court to appoint a judicial agent to go forth on a hunt in behalf of a complainant and beat the bushes for him.

"In part at least these objectional features can be safeguarded against by a rule of court to the effect that no order of seizure shall issue unless the complainant shall accompany his application with a verified statement showing the kind of property proposed to be seized, a reasonable description of it, its amount and estimated value, or, if any of these particulars cannot be stated, giving the reasons for the complainant's inability to state them, and the information upon which the complainant's belief as to any of the particulars is founded. A rule of court to this general effect will be formulated, with a provision that in any case the Chancellor may in his discretion dispense with a compliance with all or any part of the rule."

It is clear that under this rule a specification of the property to be seized is ordinarily required. The sequestrator's powers are derived solely from the court's order, and the order is (except in special circumstances) predicated upon the affidavit required by the rule. Of course the number of shares specified by the

plaintiffs may not be accurate and, so far as concerns the order of the Chancellor, a direction to seize all shares of stock of the defendant in a named corporation is a sufficient identification in respect of shares and interests held of record and appearing on the corporate books. But in respect of unrecorded equitable interests the plaintiff's affidavit and the court's order should not only specify the name of the corporation issuing the shares but should also contain an identification of the shares sufficient to enable the corporation to make adequate notations of the seizure upon its books. Presumably in the ordinary case this could be done by specifying the name of the holder of record. As the Chancellor said in his opinion below, the statute contemplates an effective seizure. It is difficult to see how an effective seizure of equitable interests can be made unless such interests appear of record or unless they are identified with reasonable certainty by the court order. Such a procedure is necessary not only for the protection of the corporation but for the protection of third parties who may be holders of record of stock in which other persons may have an interest.

In this case there has never been an order directing the seizure of the specific property plaintiffs claim to have been sequestered, that is, the equitable interests of the defendants set forth in their answers to the interrogatories. The demand of January 2, 1953, was unavailing for the purpose. We think that the Chancellor was justified in vacating the seizure orders to the extent that such orders, and the proceedings thereunder, purported to reflect any effective seizure of defendants' property. An order of the court formally relieving the corporation and the defendants from the effect of the order and the sequestrator's demands was proper.

But, for the reasons earlier set forth, we think that the plaintiff's motion for a third sequestration should have been granted, and an order entered seizing the equitable interests disclosed by the interrogatories. No supplemental affidavit was filed, but we assume that a motion, supported by the affidavits already filed and answers of the defendants, would be deemed by the Chancellor a sufficient basis for an appropriate order, under the last sentence of the rule.

It follows that the order of the Chancellor of May 5, 1953, vacating the orders of seizure, is affirmed, and the order of the same date denying plaintiffs' motion for a further order of sequestration is reversed. The cause is remanded to the Court of Chancery in and for New Castle County, for further proceedings in conformity with this opinion.