George P. **BAKER** et al., Plaintiffs,

v.

Fidel **GÖTZ** et al., Defendants.

Civ. A. No. 4072.

United States District Court,
D. Delaware.

Dec. 20, 1971.

**198**

William E. Taylor, Jr., Wilmington, Del., and Edwin P. Rome, Morris L. Weisberg, Philadelphia, Pa., Special Counsel for Trustees of the Property of Penn Central Transportation Co., and Robert W. Blanchette, Philadelphia, Pa., Counsel for Trustees of the Property of Penn Central Transportation Co., for plaintiffs.

Arthur G. Connolly and Arthur G. Connolly, Jr., Wilmington, Del., and Saul L. Sherman and William B. Graves, New York City, of counsel, for defendants.

R. Franklin Balotti, Wilmington, Del., for Textron Inc. and Textron Atlantic Inc., petitioners.

## OPINION

STEEL, District Judge.

Three defendants, non-residents of Delaware, whose property purports to have been sequestered under FRCP 4(e) [1] in an action praying, *inter alia,* for a money judgment against them,

---

1. FRCP 4(e):
 " . . . Whenever a statute or rule of court of the state in which the district court is held provides . . . (2) for service upon or notice to him to appear and respond or defend in an action by reason of the attachment or garnishment or similar seizure of his property located within the state, service may in either case be made under the circumstances and in the manner prescribed in the statute or rule."

have moved upon the basis of affidavits to vacate the sequestration and/or to dismiss for lack of jurisdiction. FRCP 4(e) incorporates by reference 10 Del.C. § 366[2] and its implementing Court of Chancery Rule 4(db), Del.C.Ann.[3]

The return of the sequestrator discloses that he purported to sequester the following property:

*Property of Inter-Marketing Corp.*

30,000 SSI Computer Corp. common stock purchase warrants.

$1,000,000 principal amount 7% subordinated note, SSI Computer Corp.

(now ITEL Computer Leasing Corporation).

50 shares common stock.[4]

*Property of Minolta*

25,360,500 (Swiss francs) principal amount 8% notes of Textron Atlantic, Inc.

*Property of Vileda*

$500,000 principal amount of SSI Computer Corp. debentures (now ITEL Computer Leasing Corporation).[5]

10,000 ITEL warrants.[6]

---

2. 10 Del.C. § 366:

"(a) If it appears in any complaint filed in the Court of Chancery that the defendant or any one or more of the defendants is a non-resident of the State of Delaware, the Court may make an order directing such non-resident defendant or defendants to appear by a day certain to be designated. Such order shall be served on such non-resident defendant or defendants by mail or otherwise, if practicable, and shall be published in such manner as the Court directs, not less than once a week for three consecutive weeks. The Court may compel the appearance of the defendant by the seizure of all or any part of his property, which property may be sold under the order of the Court to pay the demand of the plaintiff, if the defendant does not appear, or otherwise defaults . . . ."

3. Court of Chancery Rule 4(db):

"(1) No order shall be entered under 10 Del.C. § 366 unless it appears in the complaint that the defendant or any one or more of the defendants is a non-resident of the State of Delaware and the application therefor is accompanied by the affidavit of a plaintiff or other credible person stating:

(a) As to each non-resident defendant whose appearance is sought to be compelled, his last known address or a statement that such address is unknown and cannot with due diligence be ascertained.

(b) The following information as to the property of each such defendant sought to be seized:

(1) A reasonable description thereof.

(2) The estimated amount and value thereof.

(3) The nature of the defendant's title or interest therein; and if such

title or interest be equitable in nature, the name of the holder of the legal title.

(4) The source of affiant's information as to any of the items as to which the affidavit is made on information and belief.

(5) The reason for the omission of any of the required statements.

\* \* \* \* \*

(4) Within twenty days after seizure, unless otherwise specially ordered, the sequestrator shall make his return to the court, therein *setting out* all proceedings hereunder to the date of said return, including the date and hour of service and seizure pursuant to subdivision (3) hereof.

(5) The court may in its discretion and subject to statutory requirements dispense with or modify compliance with the *requirements of any* part of this rule in any cause upon application to its stating the reasons therefor."

4. The name of the company whose common stock was *purportedly sequestered is* not shown in the sequestrator's report but it is conceded to be stock of SSI Computer Corp.

5. The evidence supports the conclusion that these debentures had been sold by Vileda on December 22, 1970 by physical delivery and by payment, but on the date of the sequestration, March 19, 1971, registration in the name of the purchaser had not been effected by the transfer agent due to its request for additional signature guarantees. The buyer was in the course of supplying these when the sequestration took place.

6. By order dated September 14, 1971, the sequestration as to these warrants was inadvertently vacated. In view of the disposition which is made of the present motion this inadvertency is immaterial.

Plaintiffs are three individuals who were duly appointed trustees of the property of Penn Central Transportation Co., debtor in proceedings for reorganization of the railroad pursuant to § 77 of the Bankruptcy Act, by the Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania.

The eight defendants are either natural persons, "juridical persons", or corporations, all of whom are citizens of foreign states and reside in continental Europe. The complaint charges that seven of the defendants are completely controlled and dominated by the eighth defendant, Fidel Götz, that one or more of them entered into a conspiracy with Götz to convert and embezzle and did convert and embezzle $4,000,000 belonging to the Penn Central Transportation Company in order to benefit Fidel Götz and/or one or more of themselves in breach of their fiduciary obligations to Penn Central. The complaint prays that the defendants be required to account to plaintiffs in the amount of $4,000,000 with interest and accretions, that a judgment be entered against the defendants, jointly and severally, for punitive, exemplary, or vindictive damages, and for other relief. Jurisdiction is predicated upon 28 U.S.C. § 1332(a) (2) pertaining to aliens and diversity of citizenship. The complaint is unverified. No answer has been filed.

■ The sequestration of property in Delaware owned by a non-resident defendant for the purpose of compelling the appearance of such a defendant in an action for a money judgment is authorized by 10 Del.C. § 366. As a result of the decision in Cantor v. Sachs, 18 Del. Ch. 359, 162 A. 73, 85–86 (Del.Ch.1932), decided under the statutory forerunner of § 366, an implementing rule was promulgated by the Court of Chancery which in its present form is Rule 4(db). Greene v. Johnston, 34 Del.Ch. 115, 99 A.2d 627, 637 (Sup.Ct.Del.1953). Compliance with the affidavit requirement of Rule 4(db) is a condition to the sequestration of property owned by a non-resident defendant. In purported compliance with the Rule, William E. Taylor, attorney of record for plaintiffs, filed an affidavit which in part stated:

"2. Upon information and belief, the source of which is Edwin P. Rome, Esquire, Special Counsel for the Trustees of Penn Central Transportation Company, the property sought to be seized is the following property in which Fidel Götz or Volker Götz has a legal or equitable interest, or in which one or more of the other named defendants, which are all controlled by Fidel Götz, has or have a legal or equitable interest:

(a) Notes in the amount of approximately $7,000,000 issued by Textron, Inc., which are owned by, or in which the following have an interest: Inter-Marketing Corp. Anstalt, Götz Aktiengesellschaft of St. Gallen, or Inter-Industry Aktiengesellschaft of St. Gallen, or one of the other defendants;

(b) Common stock of California Financial Corp., 11 Tillman Place, San Francisco, California, of an approximate value of $250,000, in which one or more of the defendants have an interest;

(c) Debentures and/or common stock of Culligan, Inc., of a value of approximately $150,000, in which defendant Vileda Anstalt, or one or more of the other defendants, has an interest;

(d) Convertible subordinated notes of C.B.K. Agronomics, Inc., 1125 Grand Avenue, Kansas City, Missouri, in which one or more of the defendants has an interest;

(e) Subordinated 7 percent notes of ITEL Computer Corporation (formerly known as S.S.I. Computer, Inc.) of a face value of $2,000,000, in which Finanz Aktiengesellschaft, or Vileda Anstalt, or Inter-Marketing Corp. Anstalt, or one of the other defendants has an interest;

(f) Common or preferred stock of Oceanography, Inc., of an approximate value of $500,000, in which one

or more of the defendants has an interest;

(g) Debts, obligations and property of, or held by, Bache & Co. Incorporated, in which defendant Inter-Marketing Corp. Anstalt, or one or more of the other defendants has an interest;

(h) Debts, obligations and property of, or held by, Eastman Dillon, Union Securities & Co. Incorporated, in which defendant Finanz Aktiengesellschaft, or defendant Inter-Marketing Corp. Anstalt, or one or more of the other defendants has an interest;

(i) Debts, obligations and property of, or held by duPont, Glore Forgan, Incorporated (formerly William R. Staats & Co. Incorporated or Glore Forgan, Wm. R. Staats Inc.), in which one or more of the defendants has an interest;

(j) Debts, obligations and property of, or held by duPont Glore Forgan Municipals, Incorporated (formerly Francis I. duPont Municipals, Inc.), in which one or more of the defendants has an interest;

(k) Notes issued by Textron, Atlantic, Inc., a wholly-owned subsidiary of Textron, Inc., in which Inter-Marketing Corp. Anstalt, Götz Aktiengesellschaft of St. Gallen, Inter-Industry Aktiengesellschaft of St. Gallen, Minolta Anstalt, or one or more of the other defendants has an interest;

(l) Common stock of Summit Industries, Inc. held by one or more of the defendants;

(m) Common Stock of Summit Corporation, held by one or more of the defendants."

The affidavit continued by alleging the nonresidency of the defendants, setting forth their last known addresses and then continued:

"5. The number of shares of stock, notes, debentures, debts, contract obligations and any other property of said defendants ('property'), insofar as known to your affiant, are set forth in paragraph 2.

6. Affiant is unable to state the value of any of the property owned by any of said defendants, except as set forth in paragraph 2, because that information is peculiarly within the knowledge of said defendants and the corporation whose shares, notes, debentures, debts and contract obligations are involved.

7. The title of the defendants to said property cannot specifically be determined to be legal or equitable with respect to the various items of property listed in paragraph 2 because all of said property in whatever manner said property is held is subject to the control and domination of Fidel Götz and cannot be determined from time to time, except on information obtained from said defendants.

8. Affiant is unaware of and, therefore, unable to state that any person or persons or other legal entities have an equitable or legal interest in any of said property because such information is peculiarly within the knowledge of the defendant Fidel Götz or persons or corporations subject to his control and domination and not available to plaintiffs or affiant.

9. The statements made herein are made upon information and belief, based upon information supplied to affiant by Edwin P. Rome, Esquire, affiant's associate counsel, based upon investigation by (a) Mr. Rome, (b) Robert W. Blanchette, Esquire, Counsel for the Trustees of Penn Central Transportation Company, and (c) other partners in the firm of Blank, Rome, Klaus & Comisky, Special Counsel for the Trustees of Penn Central Transportation Company, appointed as such counsel by orders of the Honorable John P. Fullam, United States District Judge for the Eastern District of Pennsylvania.

10. Affiant has stated all knowledge which he or Mr. Rome presently has from investigations relating to the

facts required to be set forth pursuant to Chancery Court Rule 4(dd). Any failure to specifically set forth the facts required by this Rule has been occasioned by affiant's inability to secure any further information."

This affidavit fails to state that either Inter-Marketing, Minolta or Vileda owned any of the property which has been sequestered. In paragraph 8 Taylor states that he is unaware of and unable to state whether any of the defendants have any interest in any of the property which is specified in paragraph 2. Presumably paragraph 8 relates to Taylor's lack of personal knowledge. Paragraph 2 is based upon information and belief, the source of which is Edwin P. Rome, Esquire, Special Counsel for the Trustees, and it is likewise deficient for it fails to state that either Inter-Marketing, Minolta or Vileda own any of the property which has been seized. It says only that one or more of the eight defendants have an interest in one or the other of the thirteen categories of property specified in paragraph 2. This is tantamount to saying that Inter-Marketing, Minolta or Vileda *may* be the owner of some of the property (not specifically designated as theirs) listed in paragraph 2. If Taylor's affidavit is sufficient to support the present seizure, so also would be an affidavit stating that one or more of fifty defendants *might* own specified stock or bonds in one or more of one hundred companies. On the basis of such an affidavit the sequestrator would be required to perform the duties of a "fisherman", to use the Cantor v. Sachs expression, and thereby ascertain which if any of the defendants owned which if any of the property designated. In the *Cantor* case Chancellor Wolcott said:

"It seems to me that complainants who seek to bring their adversaries into court by seizure of their property ought to be prepared to say with reasonable certainty what property they desire to have seized." Cantor v. Sachs, 18 Del.Ch. 359, 162 A. 73, 85 (Del.Ch.1932).

The purpose of Rule 4(db) is to thwart fishing expeditions. Rebstock v. Lutz, 39 Del.Ch. 25, 158 A.2d 487 (Sup.Ct.Del.1960); Lutz v. Boas, 38 Del. Ch. 563, 156 A.2d 96 (Del.Ch.1959). This object would be defeated if the Taylor affidavit were held to be sufficient to support the sequestration.

Plaintiffs argue that the Taylor affidavit states the reasons why plaintiffs have not specified "the property of each defendant sought to be seized" and that therefore 4(db) (1) (b) (5) has been satisfied.[7] This authorizes a statement in the affidavit of

"(5) The reasons for the omission of any of the *required* statements". (Italics supplied).

The "required" statements are only those necessary under Rule 4(db) (1) (b) (1–4). These include, as to the property of each defendant sought to be seized, a reasonable description, the estimated amount and value, the nature of the defendant's title or interest, and the source of the affiant's information as to any of the items stated upon information and belief. These are the only statements which may be excused under Rule 4(db) (1) (b) (5). Rebstock v. Lutz, *supra*, 158 A.2d at p. 490, Lutz v. Boas, *supra*.

If a sequestration order is to be granted upon the basis of an affidavit which fails to specify the property of each defendant sought to be seized it can be done, if at all, only by following the procedure stated in Rule 4(db) (5).[8] This states that:

"The court may in its discretion and subject to statutory requirements dis-

---

7. Paragraph 10 of the Taylor affidavit asserts that the affidavit contains all of the facts which he or his associate, Mr. Rome, have been able to ascertain and that:
 "Any failure to specifically set forth the facts required by this rule has been occasioned by affiant's inability to secure any further information."

8. This is to be distinguished from 4(db) (1) (b) (5).

pense with or modify compliance with the requirements of any part of this rule in any cause upon application to it stating the reasons therefor."

 This rule was intended to provide a method by which plaintiffs who are for some reason unable to meet the general requirements of Rule 4(db) can be relieved from doing so if judicial approval is obtained after an application therefor has been filed, subject to the exception that the statements necessary under 4(db) (1) (b) (1–4) can be met by an affidavit which satisfies 4(db) (1) (b) (5). The need for a plaintiff to specify the property of each defendant sought to be seized is so basic that if it is excusable at all it can only be by judicial action taken under 4(db) (5). Plaintiffs have never applied for or obtained such approval. The mere fact that the sequestration order was signed was not compliance with Rule 4(db) (5), the object of which was to require the attention of the Court to be specifically directed to an omission not curable under 4(db) (1) (b) (5) before a sequestration order was entered.

 Plaintiffs argue that paragraph 2 of the Taylor affidavit is tantamount to an allegation that the defendant Fidel Götz is in fact the owner of some or all of the property specified in paragraph 2 of Taylor's affidavit. This contention rests on the premise that the affidavit alleges that each of the seven defendants other than Fidel Götz is but his alter ego, agent or instrumentality. The language of paragraph 2 will not support this interpretation. Furthermore, the sequestrator's return fails to show Fidel Götz to be the record holder of any of the property attempted to be sequestered and specific shares in which Fidel Götz may have had a beneficial interest were not sufficiently identified in the papers served upon Inter-Marketing, Minolta or Vileda. Under similar circumstances the court said in Cannon v. Union Chemical & Materials Corp., 37 Del.Ch. 399, 144 A.2d 145 (Del.Ch.1958) at pp. 146–147 that it had obtained no jurisdiction under the sequestration statute.

The motion to vacate the sequestration will be granted because of the insufficiency of the Taylor affidavit. The defendants have raised other substantial objections to the validity of the seizure but it is unnecessary to pass upon any of these.

The order to be entered will stay the effectiveness of the vacation of the sequestration for five days from the date of the order for the purpose of enabling plaintiffs in the interim to seek appellate review of the order, and a stay in either this Court or the Court of Appeals. This provision in the order will make moot the pending motion of plaintiffs styled "Motion for Stay Pending Possible Appeal."

The defendants argue that since the sequestration must be vacated the action as to the defendants Inter-Marketing, Minolta and Vileda must be dismissed. The same argument is made with reference to the other defendants who have successfully moved to quash the sequestration of their property. See order of September 14, 1971. It would be premature to dismiss the action simply because no effective service has brought the defendants or their property before the Court. The plaintiffs will be given until February 15, 1972 within which to effectively serve the defendants in personam or to sequester their property. Failing such service or sequestration the action, upon motion of defendants, will be dismissed. See Schwartz v. Miner, 36 Del.Ch. 481, 133 A.2d 599 (Del.Ch.1957).

Pending also is the related petition of Textron Atlantic, Inc. and Textron, Inc., non-defendants, seeking instructions as to whether or not notes which they have issued have been effectively sequestered by the order of March 19, 1971. The reasons given for vacating the order of sequestration support the conclusion that they have not been.